## The People v. Jerome Slack.

*Marriage under the age of consent: Separation: Bigamy.* When persons are married, one of whom is over and the other under the age of consent, the former by the statutes of this State is bound by the marriage unless they separate by consent before the other reaches lawful age, and do not co-habit afterwards; or, unless the other refuses consent on arriving at that age. And a second marriage by the former, in the absence of such mutual separation, or of such refusal to consent, is bigamy.

*Heard January 9th. Decided January 14th.*

Error to Kalamazoo Circuit.

The defendant was tried and convicted upon an information for bigamy.

The facts and the exceptions to the ruling of the court are stated in the opinion.

*William L. Stoughton,* Attorney General, and *A. Williams,* for People: .

1. There is but one question for consideration in this case, to wit:

Was the said charge of the court a true reflection of the object of *Sec.* 3223, *Comp. Laws,* ( considered in connection with *Secs.* 3224 *and* 3255, *Comp. Laws,*) as applied to this case ?

We think it was, and hold that to warrant a different charge, or to constitute such a separation as is contemplated by said Sec. 3223, it must affirmatively appear, from testimony introduced on the trial.

*a.* That the separation, was the single fruit of the judgment and action of the party within the age of consent, at the time of the marriage.

*b.* That the party within such age, occasioned the separation, as aforesaid, with the fixed intent of avoiding or annulling the marriage forever.

*c.* That such separation and intent were continued by the party within such age, till arrived at the age of consent; and that thereupon such party then deliberately annulled and determined the marriage.

*d.* That the separation and annulling of the marriage, were in no wise induced by the fraud, fault, or procurement of the party who, at the time of the marriage, had arrived at the age of consent; and,

*e.* That the party who was of full age at the time of the marriage, will not be allowed, at any time thereafter, by word or act, directly or indirectly, to annul or resolve the marriage void; thereby taking advantage of the nonage of the other party, or of his own wrong. — 1 *Mich.* 42.

2. The foregoing views are strengthened by turning to and considering *Secs.* 3224 *and* 3255 *Comp. L.* Though provision is made by said *Sec.* 3224 for having a marriage supposed to be void or illegal, where the parties have separated during the nonage of one of them, "upon the proof of the nullity of the marriage, declared void by a decree or sentence of nullity;" yet, this privilege, by said *Sec.* 3255, is expressly denied to the party who was of the age of legal consent at the time of the marriage;" and also denied to both parties "when it shall appear that the parties, after they had attained the age of consent, had freely cohabited as man and wife." — *Comp. L.* § 3225. And looking at the common law which fixes the age of competency for marrying at twelve years for females, and fourteen for males; and at *Sec.* 3204, *Comp. L.* which changes those ages, for such purpose to sixteen and eighteen years, respectively; and carefully considering them in connection with said *Secs.* 3224 and 3255, it seems quite unsatisfactory to conclude otherwise than that the legislature, in incorporating these two sections, last recited, into our statutes, upon the subject of marriage and divorce, intended,

*a.* That at no time, and in no manner, shall the party of full age when the marriage was solemnized, be at liberty to avoid or annul it; and,

*b.* That the party within such age, at the time of the marriage, is also deprived of that privilege till reaching full age, and not then unless a separation, of the description aforesaid, had occurred before reaching such age, and was not followed by free cohabitation afterwards.

Indeed, the construction of our statutes, as herein claimed, will be found, we think, to be the doctrine of the books, or in accordance with the weight of authorities. — *Bishop on Marriage and Divorce*, § 19 *to* 29; *Pars. on Con.* 277 – 8, 563 – 4 – 5; 2 *Green, Iowa*, 379.

3. The important and sacred character of the institution of matrimony, considered with respect to its divine origin and purposes in promoting morality, christianity, and a well ordered society, can tolerate no easier, or less rigid construction of our statutes, touching marriage and divorce than that insisted upon by us. — 1 *Bishop, Cr. L.* §§ 376 – 9; *Bishop on Marriage and Divorce*, §§ 31 – 40.

The following authorities were cited as to the construction of statutes. — 6 *Johns.* 103; 7 *Id.* 482, 492, 503; 8 *Id.* 41; 9 *Id.* 356; 10 *Id.* 461; 12 *Id.* 175; 15 *Id.* 510; 3 *Mass.* 523; 5 *Id.* 380; 7 *Id.* 451; 22 *Pick.* 571; 3 *Scam.* 153; 4 *Md.* 335; *Black. on Tax Titles,* 609 – 627.

We submit, therefore, in conclusion, that the defendant has no right to a construction which will evade the purposes of said *Secs.* 3223 – 4 *and* 3255. Coming here as he does, for aught we can see, with unclean hands, seeking to take advantage of his own wrong, by and through a construction of our statutes which would be fruitful in crime, we most respectfully, but earnestly, submit that he should be sent back from this court, with his request denied, and to receive the pains and penalties which a just and violated law pronounces upon him.

*Stuart, Edwards & Severens,* for defendant.

There is but a single question in this case, and that is one of statutory construction.

The court below, held for the purpose of that trial, that the age of legal consent referred to in section 3223, Compiled Laws, is the age of legal consent as fixed by the common law — that being twelve years, in the case of a female.

We insist that this was erroneous.

Marriage, under the law of this state, so far as its validity in law is concerned, is a civil contract, to which the consent of parties capable in law of contracting, is essential. — *Comp. Laws,* § 3205.

The section immediately preceding (3204) declares who are capable in law of contracting, namely, males of the age of eighteen, and females of the age of sixteen, if otherwise competent.

Now, this last cited section supercedes the common law rule, or it is senseless.

1. The chapters upon marriage and divorce, from which the preceding sections are taken, are *in pari materia,* and it is a cardinal rule, that all acts on the same subject-matter are to be taken together and examined, and construed with reference to each other. — *Sedg. on Stat. and Const. Law,* 247, 251; *Doug.* 30; 1 *Burr.* 445.

Where there are different statutes *in pari materia,* though made at different times, or even expired, and not referring to each other, they shall be taken and construed together as one system, and as explanatory of each other. 20 *Johns.* 735; 9 *Cow.* 437; 15 *Barb.* 627; 6 *Id.* 60, 75; 9 *Id.* 161; *Smith's Com.* 751, §§ 736, 639; 1 *Kent's Com.* 463 – 4; 3 *Mass.* 21, 296; 8 *Id.* 423; 1 *Pick.* 254; 10 *Id.* 235; 20 *Id.* 267, 407.

2. Another fundamental rule of interpretation is that all the provisions of the statute upon the subject are to have their weight in fixing the construction of each, and

such a construction of the whole is to be adopted as shall give effect to every provision, if possible; and shall make no part nugatory or senseless. — 2 *Mich.* 138; 5 *Id.* 114; 7 *Cush.* 53; 22 *Pick.* 573; 15 *N. Y.* 532; 1 *Binn.* 601.

These rules plainly point to the conclusion that when the legislature in one section speaks of the "age of legal consent," and they have already in another section fixed that age, they must have referred to the standard they had established. Any other rule of interpretation would make these statutes a snare to the common understanding.

The Supreme Court of Ohio have held upon provisions in their statutes very similar, if not substantially identical with ours, that the common law was superseded, and that in a case where one of the parties was under the age of legal consent, as fixed by statute, at the time of the marriage, and there had been no cohabitation after arriving at that age — such marriage was void, and the parties might lawfully marry again. — 20 *Ohio*, 1; 2 *Wharton, Crim. Law*, § 2628 (*5th ed.*)

COOLEY J.

The defendant was informed against in the court below for bigamy. It was admitted by him on the trial that on the 29th day of May, 1864, he intermarried with one Electa A. Ogden, at Oshtemo, in this state, who was at the time under the age of sixteen years, and that before she arrived at that age she and the said defendant separated, and that they have not, since such separation, cohabited; and that said defendant, claiming such marriage to be void, afterwards, on the 4th day of November, 1865, was again married to one Auleda Beecher — the said Electa being then living. Upon this admission, and certain evidence supporting it, and which also showed that said Electa was more than twelve years of age at the time of the first marriage, the Circuit Judge was asked to charge the jury, that if said Electa was under the age of sixteen

at the time of the first marriage, and that the parties separated before she arrived at that age, and did not at any time afterwards cohabit, they must find the defendant not guilty.    This request the judge refused, and charged the jury, among other things, as follows:

"It is proved that the said Electa Ogden was, at the time of her said marriage with the defendant, over the age of twelve years, and under the age of sixteen years, and that they cohabited as husband and wife from the time of said marriage for a short time, when, and before the the said Electa had attained the age of sixteen years, the parties became separated and ceased to cohabit as husband and wife, and have not cohabited as husband and wife, or lived together since.    The defendant's counsel, on these facts, asks the court to advise you that the marriage with said Electa was and is void, and that, therefore, you should find the defendant not guilty.    Having serious doubts upon this question, and believing that it ought to be considered by the court of last resort, for the purposes of this trial, I advise you that the said facts do not show said marriage with said Electa to have been void, and that, therefore, you ought to find the defendant guilty."    The defendant was accordingly convicted, and the correctness of this charge is the sole question brought up for review.

We are all agreed that this charge cannot be supported, and that a new trial should be directed.    The age of legal consent is fixed by our statute at eighteen in males, and sixteen in females — *Comp. L.* § 3204 — and it is provided by another section that,    "In case of a marriage solemnized when either of the parties was under the age of legal consent, if they shall separate during such nonage, and not cohabit together afterwards,    *    *    *    the marriage shall be deemed void without any decree of divorce or other legal process."— *Comp. L.* § 3223.    It was suggested rather than urged, on the argument, that the age of legal consent intended by the section quoted, was that of the

common law, which, in the case of females would be twelve years; but we think there is no foundation for this suggestion. When one part of the statute fixes the age of consent, we should do violence to the plain intent of the legislature if we should hold that the " age of legal consent" mentioned in any other part of the same statute meant anything else than the legal age thus fixed. The common law rule having been abrogated in this state, there is nothing to which we can refer this phraseology but the rule which the statute has thus substituted.

The only doubt any of us have had upon this point arises from the somewhat ambiguous character of the admission in regard to the separation, and the charge based upon it. We are all agreed that if the separation takes place with consent of the party under age, and cohabitation is not resumed after such party attains the age of consent, the marriage is thereby rendered null, while we are not agreed that the party who is of competent age can, by his own act, annul it. But as the charge of the court would cover the case where the separation was by mutual consent, as well as a case of desertion by the competent party, we think there should be a new trial, that the jury may have an opportunity to determine whether this case was the one or the other.

The question then arises as to the directions to be given for the conduct of the new trial. It is insisted by the defendant that, under the statute quoted, either party is at liberty to annul the marriage at any time before the one under the age of legal consent shall attain it, and that either is then at liberty to marry again. I do not think this is the law under our statute.

At the common law, it was undoubtedly the rule that the right to annul the marriage continued with one party as long as it did with the other. — *Reeves Dom. Rel. p.* 200. But as this subject is fully covered by statutory provisions in this state, we have only to see whether those

provisions have introduced any change in this particular. That they were intended to do so, seems to me very clear.

If we look no further than the statute above quoted, it is difficult, I think, to avoid the conclusion that the separation spoken of is something other than the abandonment by the party over age of the person who is within the age of consent, and who will usually be induced to enter into the marriage by the arts and solicitations of the other. There are so many and so powerful reasons against a rule which leaves females who have reached the age of puberty, but are not yet sixteen, at the mercy of the wiles of designing men, who, after enticing them into a marriage with all the solemnities of the law, may then desert and abandon them with impunity, that we are not disposed lightly to conclude that it was designed to adopt it as a statutory rule. And I do not think apt words are employed for the purpose, if such was the intent. Where a man competent to contract marriage enters into the relation with one who lacks the capacity to give binding assent, and after a brief cohabitation, against her will abandons her, the act is not properly a *separation*, but a *desertion;* and the latter is the proper term to apply to it. And as such a desertion would commonly be a great wrong to the female, and shock the moral sense of the community, we should naturally look in the statute for penal provisions, rather than for those which would not only exempt the wrong doer from any punishment, but allow him with like impunity to repeat the process elsewhere so often as he may find a confiding female who will yield to the proposals he makes, accompanied as they are with all the appearance and form of honesty and honor. For the marriage being only voidable, and not absolutely void, all the consequences of a legal marriage flow from it until it is avoided; it could not be punished as seduction, nor has any statute in any way attempted to make it criminal. I do not think this section can fairly be held to protect

such a desertion; but, on the contrary, that it refers only to the separations which are brought about by the mutual consent of both, or by the refusal of the party under legal age to assent to further cohabitation.

But another section of the statute seems to me to place the construction of this beyond question. Section 3255 of the Compiled Laws provides that "A bill to annul a marriage on the ground that one of the parties was under the age of legal consent, may be exhibited by the parent or guardian entitled to the custody of such minor, or by the next friend of such minor; *but in no case shall such marriage be annulled on the application of the party who was of the age of legal consent at the time of the marriage*, nor when it shall appear that the parties, after they had attained the age of consent, had freely cohabited as man and wife."

Here is an express prohibition of the judicial annulment of the marriage on the application of the party who was competent to contract. It seems to me incredible that the legislature could ever have enacted this provision if they supposed that by another section in the same statute they had empowered such party to annul the marriage upon his own motion alone. There are manifest reasons why it would be proper that a judicial decree should be had in any such case; and I am unable to conceive of any for prohibiting it. If the marriage is to be annulled at the option of the competent party, it would still seem desirable that he should apply to the proper court for its decree in the premises, that any doubtful question of fact might be judicially settled, and also that the court might be enabled to direct the making of proper provision for the children of the marriage, if any. There are the same reasons for his filing a bill for the purpose, as for the other party or her natural or legal protectors doing so, unless the intention was to make the marriage absolutely binding upon him at her option. And it appears to me from the statute first above quoted, taken in connection

15 Mich. — o.

with this, that such was clearly the legislative intent. Prohibiting the party from applying to have the marriage annulled in equity, if he has the power in his own hands, was, to say the least, a work of supererogation, as parties are not likely to ask permission of the courts to do an act which they have the right to do without permission, especially when the proceeding would be accompanied with considerable expense to themselves.

I think the circuit court should' be advised that it is the opinion of this court that a new trial should be granted, and that it is also the opinion of this court that the said first marriage was binding upon the defendant upon the facts shown, unless the separation was by the mutual consent of the parties, or by the refusal of said Electa to continue the cohabitation after reaching the age of consent.

CHRISTIANCY J. concurred.

MARTIN Ch. J. did not sit in this case.

CAMPBELL J.

I concur with my brethren in granting a new trial in this cause, for the reason that the marriage with prisoner's first wife was before the statutory age of consent had been attained, which has superseded the common law period. I concur, also, that a separation by mutual consent before such age was reached, and without subsequent cohabitation, would prevent the marriage from having legal validity. But I think the statute goes somewhat further in this respect than it seems to them to extend, and that defendant would not be required to show on the new trial that the separation was by mutual consent.

At the common law, there can be no doubt but that a marriage contracted while either party was under the age of consent might be annulled by either, and no preference was given to the person under age 'over the older one.

And I understand the effect to have been that the marriage was of no complete and absolute validity, until the arrival of both parties at the legal age enabled them by their conduct to affirm it, if they so desired. Up to that time, it was always subject to defeat by either. And, while there are undoubtedly many reasons which render such an unsettled condition very unfortunate, yet it would be, in my judgment, a greater and more dangerous anomaly, to have marriages which bind one party and do not bind the other. Our statutes, after fixing the age of consent, proceed to declare expressly that "marriage, so far as its validity in law is concerned, *is a civil contract, to which the consent of parties capable in law of contracting is essential.*—2 *C. L.* § 3205." I can not reconcile this language with the idea that the legal consent of one party can create a marriage, when the consent of the other is wanting. And I think the provisions on this subject in the next chapter of the statutes, concerning divorces, do not weaken this conclusion, but rather strengthen it. The second section (§ 3223 of the Compiled Laws), if standing alone, would, as it appears to me, hardly admit of any other meaning. It declares that in case of a marriage solemnized when either of the parties was under the age of legal consent, "*if they shall separate during such nonage, and not cohabit together afterwards, the marriage shall be deemed void without any decree of divorce, or other legal process.*"

This language is not consistent with the idea that the marriage is voidable only, nor does it seem intended to introduce any new rule on the subject. "*Separation*" does not in itself mean necessarily that both parties agree to it. Such is not its popular meaning, nor has it any such settled legal meaning. The validity of the marriage must depend on consent given after reaching the legal age, by the acts or conduct of the parties; and if they are not then, or subsequently, living in marital relations, there is

nothing to reach back to the previous union, and nothing which can make it valid, therefore, by ratification. A marriage once valid can only be dissolved by a divorce, and the statute expressly declares no legal process shall be required in these cases.

It is, however, held by my brethren that the subsequent sections, which authorize parties to bring suits to establish the nullity of the marriage, inasmuch as they are confined to the party under age, govern the previous section, or at least signify the intent which should be deduced from the entire statute. I do not concur in this view. If such was the meaning of the second section, I think there could have been no reason to make an express provision prohibiting suits in chancery from being brought by any except the minor under the age of consent. And the fact that this prohibition is confined to proceedings in chancery, furnishes a strong argument against its applicability to cases where no such proceedings are sought or needed. For while we may very well say, as a matter of prudence, that a decree of nullity is always desirable to avoid difficulty, yet the statute declares expressly that it is unnecessary, and only permits, without requiring or recommending it. If there were not other cases where a remedy in equity is confined under analogous conditions, I should concede the very great force of the argument in favor of confining the election to the party under age. But it is one of the most familiar principles of equity that there are many contracts and liabilities which equity as well as law regards as void, but against which equity affords no relief whatever, or, in some cases, affords only modified relief upon equitable conditions.

There are very many illegal and void acts which equity will not relieve against at all, and others where it will only relieve one party. For example, where usury avoids an agreement, equity will not enforce it; but, on the other hand, it will not relieve the borrower unless he will pay

the debt with legal interest. And in relation to marriages, while the policy of the law is certainly very clear against allowing them to be contracted by persons under age, yet I can very well conceive why a court of equity, even without any statute, might decline to aid a party who has been in fault. And this statute, while it does not profess to go upon the ground of fault (because the older party may have acted in perfect good faith), has doubtless assumed that in most cases the person under age is least to blame, and has, therefore, given to that person a privilege of suit which it has denied to the other.

The question of interpretation is not one upon which our ideas of policy can have very much bearing, as, after all, the language of the statutes must govern. There is, it must be admitted, a great danger of abuse, but even here it does not seem at all certain that the evils are not as incident to one interpretation as the other. While males of over eighteen may abuse the confidence of young women under sixteen, yet if this is done, and they then desert them, I can see no difficulty in reaching such cases under the laws punishing seduction. And where the female is over sixteen, and the male under eighteen, then it is, under this construction, entirely at his option, and not at hers, to repudiate the connection. In other countries, and I suspect here, also, there is as much fraud committed by entrapping young persons over the age of consent into undesirable marriages with those who are under, as there is by any other misconduct concerning such marriages; and both parties are often mere puppets in the hands of others. Our laws, by raising the ages, have lessened this danger, but the woman is still able to marry at an age when she is easily imposed upon, and her husband may be within the smallest period less than two years older, and have a means of avoiding a marriage which she can not, under this rule, recede from.

In this, as in other relations, parties must be held to a knowledge of the law; and the cases can not be very numerous which would render it desirable to enable one party rather than the other to recede from an illegal marriage. But be this as it may, I can not but regard our statutes as placing them upon an entire equality, except in the one case of commencing suits in equity.

While, therefore, I agree in ordering a new trial, I think it is not necessary that the marriage in the case at bar should have been repudiated by the wife.