HUNT v. HUNT.

No. 549.    Opinion Filed March 13, 1909.

(100 Pac. 541.)

1.  MARRIAGE—Validity—Prohibited Contract. Section 1, art. 1, c. 51, par. 3482, Wilson's Rev. & Ann. St. 1903, provides that marriage is a personal relation arising out of a civil contract, yet it differs to such an extent from all other contracts in its consequences to the parties and to the public that the rule that prohibited and penalized contracts are void does not apply thereto.

2.  SAME—Prohibited Marriages—Invalidity—"Void Marriage." Section 3, art. 1, c. 51, par. 3484, Wilson's Rev. & Ann. St. Okla. 1903, provides:  "Every male under the age of eighteen and every female under the age of fifteen years, are expressly forbidden and prohibited from entering into the marriage relation." Section 16, art. 1, c. 51, par. 3497, of the same statute makes criminal and prescribes a penalty for those solemnizing or entering into marriages contrary to the foregoing provisions. A youth of 16, and a girl of 14, were married. Held, that while the marriage was prohibited and illegal, it was voidable only; and not void.

3.  SAME—Suit to Annul—Allowance to Wife. In a suit at the instance of a husband to annul  such marriage, the court, at any stage of the proceedings where he is shown to have property sufficient, may make and enforce an order requiring him to pay a reasonable allowance for the maintenance and support of his wife and a child born of such marriage, and a reasonable allowance for suit money to enable her to defend.

(Syllabus by the Court.)

*Error from District Court, Osage County; L. M. Poe, Judge.*

Action by Orial A. Hunt, by his next friend, Mary A. Hunt, against Hazel May Crabbe Hunt and others. Judgment for defendants, and plaintiff brings error. Affirmed.

*Mitchell & White,* for plaintiff in error, cited: *Wilhite v. Wilhite,* 41 Kan. 154; *Penn v. Bowman et al.,* 102 Ill. 523; *Powell v. Powell,* 18 Kan. 371; *McDeed v. McDeed,* 67 Ill. 545; *Conale v. People,* 177 Ill. 219; *Loveren v. Loveren* (Cal.) 35 Pac. 87; *Bordeaux v. Bordeaux* (Mont.) 75 Pac. 359.

*Boone & MacDonald* and *John D. Devereux,* for defendant in

error, cited: 13 Enc. Pl. & Pr., pp. 870, 884-5-6; 2 A. & E. Enc. Law (2d Ed.) 104; *Pool v. Webber,* 95 Cal. 339; *Elliott v. Elliott,* 77 Wis. 634; *Lea v. Lea,* 104 N. C. 603; Tiffany on Personal and Domestic Relations, pp. 19, 43; *Willits v. Willits,* 76 Neb. 228.

DUNN, J. March 4, 1906, Orial A. Hunt, at the age of 16, was married to Hazel May Crabbe, who was of the age of 14, each of said parties having previously received the consent of their parents to marry. In July following the plaintiff abandoned his wife, and never thereafter resumed his marriage relations with her. On January 1, 1907, a child was born, and on the 24th day of May following the birth of the child, the husband and father filed his petition in the district court of Pawnee county, praying an annulment of the marriage, and for ground thereof set out the abandonment of his wife and his minority at the time of the marriage. On the 25th of February, 1908, the defendant filed an affidavit averring the abandonment and failure to provide on the part of plaintiff, and setting out the expenses to which she and her relatives had been by reason of the birth of the child, also in securing its allotments as a member of the Osage tribe of Indians, and asking for an allowance to cover these expenses, which it was averred were about $500, and asking for attorney's fees $150, in order to enable her to defend the action brought against her. The defendant in her answer denied the invalidity of the marriage, and prayed that the same be declared valid, also for alimony *pendente lite,* and an allowance as an attorney's fee.

Trial was had on March 5, 1908, and on March 7th the judge entered a decree annulling the marriage, giving the care and custody of the minor child to the defendant, and at the same time made an order, based on the affidavit previously filed for temporary alimony, expense money, and attorney's fee, in which the court found that defendant's expenses during the 18 months prior to the date of the trial, during the abandonment, was at least $295, and that $150 was a reasonable fee for her attorneys, and

required the plaintiff, within 10 days to pay this sum, $445, into court. The plaintiff challenged the power of the court to make this order, gave a supersedeas bond, and appealed therefrom to this court. While the case was pending here, and on February 8, 1909, there was filed in the office of the clerk of this court a motion by counsel for defendant in error, duly verified, setting up that their client was absolutely without means or credit whereby to compensate counsel in this court, or to discharge the expenses of preparing her defense; that her counsel had never been paid anything whatever for representing her in the suit. Each of the affidavits filed set out the ability of the plaintiff to pay a reasonable allowance.

To secure favorable consideration, and to induce this court to reverse the allowance made in the trial court and deny it here, counsel for plaintiff in error argue three propositions, contending, first, that the marriage between plaintiff and defendant was void; second, that the plaintiff was under no legal obligation to maintain and support the defendant after his election, in July, 1906, to abandon the marriage and his wife; third, that in such case as this, where a male under 17 years of age, and a female under 15 years of age, in violation of paragraph 3484, Wilson's Rev. & Ann. St. 1903, have married, and where the husband abandoned the relation and the wife before arriving at the age of 17 years, and did not thereafter resume the same, and where he sues under section 645, art. 28, c. 66, par. 4834, Wilson's Rev. & Ann. St. Okla. 1903, and procures a judgment in the district court annulling such marriage, he was not liable for the support of such infant wife during the interval from the date of the abandonment to the date of the rendition of the judgment, nor was he liable for attorney's fees of the wife in defending such action, and especially was this true where the allowance was not made until after the establishment of his right to have the marriage annulled.

Section 3, art. 1, c. 51, par. 3484, Wilson's Rev. & Ann. St. Okla. 1903, provides:

"Any unmarried male of the age of twenty-one years or up-

ward, or any unmarried female of the age of eighteen years or upward and not otherwise disqualified, is capable of contracting and consenting to marriage; but no female under the age of eighteen years and no male under the age of twenty-one years shall enter into the marriage relation, nor shall any license issue therefor, except upon the consent and authority expressly given in writing by a parent or guardian, and every male under the age of eighteen and every female under the age of fifteen years, are expressly forbidden and prohibited from entering into the marriage relation: Provided, that this section shall not be construed to prevent the courts from authorizing the marriage of persons in settling of suits for seduction or bastardy, when such marriage would not be incestuous under this act."

Paragraph 3497, being section 16 of the same article and chapter, provides:

"Any person, male or female, living with another person of the opposite sex as husband and wife without being lawfully married as required by the provisions of this act, and any person entering into the marriage relation contrary to the provisions of this act, and any probate judge knowingly issuing any marriage license contrary to the provisions of this act, or any person knowingly performing or solemnizing the marriage ceremony contrary to any of the provisions of this act, shall be guilty of a misdemeanor, and upon conviction be punished by (a) fine of not less than one hundred dollars nor more than five hundred dollars, or by imprisonment in the county jail not less than thirty days nor more than one year, or by both such fine and imprisonment."

It is conceded by all parties that this marriage was not consummated in settlement of any suit such as is mentioned in paragraph 3484, *supra,* and the question presented by counsel's first contention is, Does a marriage, where the male is under the age of 18, and the female under the age of 15 years, which, as we have seen, is expressly forbidden and prohibited, have any validity whatever? Is it absolutely void, or merely voidable?

Stewart on Marriage and Divorce (section 55) says:

"Want of age may render a marriage void, voidable, or simply illegal."

And under section 56:

"The marriage of a party under 7 years was at common law

absolutely void; of a male between 7 and 14, or a female between 7 and 12, voidable; or a male over 14 or female over 12, valid."

And under section 49 the same author says:

"A marriage which may at once be valid to all intents and purposes, and involves the parties or third persons in penal consequences, is called a 'prohibited marriage.'"

A void marriage under the authority of a recent work (Nelson on Divorce and Separation, § 568) is defined as follows:

"A marriage is void when it has no legal effect, confers no marital or property rights, impose no duties or liabilities, and is incapable of subsequent ratification. Marriages are void when declared so by statute, and when there is a valid prior marriage undissolved."

And the elements of a voidable marriage are set out under section 569 as follows:

"Marriages are voidable which are obtained with imperfect consent, as where there is fraud, error, or duress, or the party is incapable of giving consent from want of age or mental incapacity, or where one of the parties was impotent before marriage."

The quotations from the foregoing texts find support in many of the adjudicated cases of the country, among which may be noted the following: *Meister v. Moore,* 96 U. S. 76, 24 L. Ed. 826; *Beggs v. State,* 55 Ala. 108; *Goodwin et al. v. Thompson,* 2 G. Greene (Iowa) 329; *Parton v. Hervey,* 1 Gray (Mass.) 119; *Koonce v. Wallace,* 52 N. C. 194; *People v. Slack,* 15 Mich. 193; *Willits v. Willits,* 76 Neb. 228, 107 N. W. 379, 5 L. R. A. (N. S.) 767. The foregoing cases, with the exception of one from the Supreme Court of the United States, all deal with the question of the validity of the marriage of minors below the statutory age, and they all hold the same to be valid, notwithstanding the fact that the statutes in a number of states prescribe penalties, and make illegal and criminal the solemnizing of such marriages. In an extended investigation of this proposition we have found no cases, with the exception of *Shafher v. State,* 20 Ohio, 1, where such marriages have not been sustained. This latter case was a prosecution for bigamy. The defense was that the defendant was under the age of 18 years at the time of his first marriage, and

hence that the marriage was void, and the second, by reason thereof, was not bigamous. This contention was sustained by the Supreme Court of Ohio. The case of *Beggs v. State, supra,* from the Supreme Court of Alabama, and of *People v. Slack, supra,* from the Supreme Court of Michigan, were each of the same character, and the Supreme Courts of these states held that a valid marriage was in fact consummated, and such as would support a prosecution for bigamy. This, it seems to us, would be the supreme test as to whether or not the marriage of infants was void or merely voidable. The rule to be gathered from all of the foregoing cases of this character is that, notwithstanding the statute may penalize those who solemnize or those who enter into marriage contrary to statutory authority, the marriage itself is not void unless the statute itself so makes it, and hence in the case at bar, although the marriage was expressly forbidden and prohibited, it was voidable, and not void. While marriage is a personal relation arising out of a civil contract, it differs to such an extent from all other contracts in its consequences to the parties and to the public that the rule that prohibited and penalized contracts are void does not apply thereto. *Willits v. Willits, supra.* This conclusion on our part necessarily establishes the proposition that the relation entered into between these parties constituted them husband and wife.

The action, however, was for the annulment of the marriage relation, and not for divorce, which, under the second and third contentions of plaintiff in error, presented a case in which the court was without authority to require him to support defendant in error after his abandonment of her; nor, he contends, could it require him, an infant, to furnish alimony *pendent lite* and suit money to the wife in making her defense, especially where the same were not allowed until after the right of plaintiff to have the marriage annulled had been established. Section 639, art. 26, c. 66, par. 4837, Wilson's Rev. & Ann. St. 1903, provides:

"After a petition has been filed in an action for divorce and alimony, or for alimony alone, the court, or a judge thereof in vacation, may make and enforce by attachment such order to re-

strain the disposition of the property of the parties or of either of them, and for the use, management and control thereof, or for the control of the children and support of the wife during the pendency of the action, as may be right and proper; and may also make such order relative to the expenses of the suit as will insure to the wife an efficient preparation of her case; and on. granting a divorce in favor of the wife or refusing one on the application of the husband, the court may require the husband to pay such reasonable expenses of the wife in the prosecution or defense of the action as may be just and proper, considering the respective parties and the means and property of each."

Now the question arises, Did the court, either under this section of the statute, or by virtue of its inherent equity powers, have jurisdiction to enter the order made herein, at the time of its rendition, and would this court have the power and authority to require the plaintiff in error to furnish defendant in error expense money and attorney fees to defend the action in this court. In our judgment this question must be answered in the affirmative. *Higgins v. Sharp*, 164 N. Y. 4, 58 N. E. 9; *Willits v. Willits*, 76 Neb. 228, 107 N. W. 379, 5 L. R. A. (N. S.) 767.

In the case from the Court of Appeals of New York, on this question, the court said:

"The question to be decided is whether the court has power, in an action against the woman to annul a marriage, to grant alimony and counsel fee pending the action. It is argued in support of the appeal that the court does not possess that power, and this argument is based largely upon the general proposition that the jurisdiction of the court in matrimonial cases is derived wholly from the statute; and, since the statute does not in terms confer any power upon the court to grant alimony or an allowance in actions to annul a marriage, the order in this case should be reversed. It must be admitted that the power conferred by section 1769 of the Code applies to actions for divorce or separation, properly so designated, and not to actions like this, where it is sought to procure a judgment declaring the marriage void *ab initio*. But it does not follow that because the statute which authorizes and regulates actions to annul a marriage is silent as to alimony or counsel fees, the court is without power to allow either or both in a proper case. Code, §§ 1742-1755. The gen-

eral jurisdiction conferred by the statute to entertain such actions carries with it, by implication, every incidental power necessary for its proper exercise. When a statute gives the court jurisdiction over a class of actions, it is not necessary that all the powers of the court, or all the details of the procedure and practice, should be specially enumerated. For the purpose of administering justice in such cases the court may resort to general rules of practice, and may make such orders in the case as justice requires, and may exercise such incidental powers as are usual or necessary in such cases. The power to allow alimony and counsel fees to the wife in order to enable her to live pending the action, and to present her defense, if she has one, must be regarded as incidental and necessary in all matrimonial actions. Without such power the rights of the woman, in many cases, could not be adequately protected. It seems to us, therefore, that actions to annul a marriage are governed, with respect to alimony and counsel fees, by the same principles as all other actions for divorce. When the court was vested with jurisdiction in such cases, the incidental power to guard and protect the rights of the wife, which had always been regarded as a part of the jurisdiction, necessarily followed and attached, upon the plainest principles of reason and justice."

The case of *Willits v. Willits*, from the Supreme Court of Nebraska, is a well-considered case and covers all of the questions presented in this case. The facts on which it was decided show that, after the parties had been married for some time, a child was born, and, the husband deserting the wife, she brought suit for an allowance for the support of herself and child. The defendant, among other things, pleaded in his answer that he was under the age of legal consent at the time of the marriage, and asked for annulment of the same. The court entered a decree annulling the marriage, and required the defendant to pay the plaintiff her expenses, and made a continuing decree for the support of the child, and for attorney fees and cost. From this order making a money allowance against him the defendant appealed to the Supreme Court, as did the plaintiff in the case at bar, taking the position as stated by the court:

"  *   *   *   That, by virtue of such finding and decree, the

Vol. 23—32

plaintiff was never his wife, and the status of the issue of the marriage is merely that of an illegitimate child of the plaintiff, and consequently he is required to provide for neither of them, either *pendente lite* or otherwise. This position seems to be untenable. While our law defines marriage as a civil contract (section 1, c. 52, Comp. St. 1903), it differs from all other contracts in its far-reaching consequences to the body politic itself, and for that reason, in dealing with it or the status resulting therefrom, the state never stands indifferent, but is always a party whose interest must be taken into account. There can be no doubt that a decree of annulment leaves the parties, in many respects, as though the marriages had never taken place; in just what respects is not necessary to determine át this time. * * * There would be neither reason nor justice in a rule that would visit the consequences of a mutual indiscretion exclusively upon the wife. The case illustrates the inequity of such a rule. The defendant is a young man of considerable fortune, and one whose age, judging from the evidence before us, cannot be accurately measured in years. The plaintiff is a young woman entirely without means of support. They are the parents of a child, born while the marriage was merely voidable. The plaintiff now addresses a prayer to the conscience of the court for an annulment of the marriage, a release from his liability for the support of his child, and incidentally that the whole burden of its support and nurture be cast upon the shoulders of the plaintiff. Such a prayer does not appeal very strongly to the enlightened conscience of this age. It is in sharp conflict with the maxim, 'He who asks equity must do equity,' as well as with sound public policy, which requires courts jealously to guard the rights of infants, and take due precautions to prevent their becoming a public charge."

We fully, concur in the reasoning of the courts in the foregóing cases. It strikes us eminently proper that the young man should respond in money to his child wife, at least to the extent of all the financial burden which he cast upon her when he entered into the relationship which he did. In our judgment the order of the court in this case was very moderate, and in entire consonance with justice and right.

On the question of allowance of attorney fees and expense money in this court, we will say that the same question was likewise presented to the Supreme Court of Nebraska, in the case of

*Willits v. Willits,* to˙ which we have just referred, and on this subject that court said:

"The motion made in this court for an allowance to the plaintiff for suit money was not called to our attention, either by briefs or otherwise, and for that' reason was not considered in the original opinion. Subsequently our attention was called thereto, and a further hearing had. We have no doubt that the plaintiff is entitled to a reasonable allowance for attorney fees for the services of her attorneys in this court, and are of the opinion that an allowance of $100 therefor would be reasonable. It is therefore recommended that the plaintiff be allowed the sum of $100 as attorneys fees for the services of her .attorneys in this court, and that the same be taxed as part of the costs in this court in favor of her attorneys."

Counsel presented their motion to us asking that the plaintiff in error be required to pay into the office of the clerk of this court $250 for the use and benefit of defendant's attorneys, to cover service to be rendered in defending action here, and $250 for the use and benefit of defendant in error for temporary alimony and suit money. To support it a lengthy affidavit was filed, showing that the defendant is without means or credit whereby to compensate her counsel for defending her suit in this court, or to discharge the costs and expenses necessary for the printing of briefs, etc. In addition to this it is averred and shown that the plaintiff in error has property and income sufficient to meet a reasonable allowance.

Counsel appeared for both parties in this court, and argued the case orally; besides this printed briefs for both parties have been prepared and filed. We have carefully considered all of the facts relative to this matter, and the judgment of the lower court on the order appealed from is affirmed.

In our judgment, plaintiff in error ought also to be required to meet the reasonable expenses of defendant in error in this court, including a reasonable attorney's fee. We find that $100 would reasonably cover the former, and that $150 would be a reasonable allowance for the latter. We, therefore, adjudge and decree her

entitled to $250, agreeable to this finding, and direct the same be taxed as part of the costs in this court.

All the Justices concur.