Richards, J.,
dissenting. I regret my inability to concur with the majority of the court, and were it not for the importance of the question involved I would be content with a simple statement of dissent; but I think the decision of the majority of the court is so contrary to all the authorities on the question involved that some further statement is required.
The section of the General Code cited makes females of the age of sixteen years competent to enter into a valid marriage. So far-as my investigation has gone, no authority holds that the absence of parental consent invalidates the marriage, and no authority so holding has been called to our attention by counsel for plaintiff. On the contrary, the universal holding on that subject is that the provision mentioned has to do simply with the punishment of officials who proceed without such consent. Such is the statement in 26 Cyc., 835, and authorities from many states are cited on the proposition. The authorities on the question are also collected in a note in 22 L. R. A., N. S., 1206. .
In Parton v. Hervey, 1 Gray (Mass.), 119, where the age of consent to enter into a valid marriage is twelve in females and fourteen in males, it is held that a marriage between two infants above those ages is valid without the consent of their parents or guardians, notwithstanding the statute *17 which prohibits magistrates or ministers, under a penalty, from solemnizing the marriage without the consent of parent or guardian.
The case cited has been followed and approved not only in Massachusetts but in various other states; the only difference between the Massachusetts statute and the Ohio statute being in the ages named in the statute.
The case from Nevada cited in the majority, opinion discusses the question extensively and cites numerous authorities. In the course of the opinion of the court this is said at page 66:
“It is admitted by counsel for appellant that it is commonly held under similar statutes, that the lack of the consent of parent or guardian does not invalidate the marriage.”
The question is discussed also in The People v. Slack, 15 Mich., 193, and the same conclusion reached. See also Hunter v. Milam, 41 Pac. Rep., 332, syllabus 3, and Lacoste v. Guidroz, 47 La. Ann., 295, 16 So. Rep., 836, syllabus 4. In the latter case the parties separated at the altar without speaking to each other thereafter. In our own state something has been said on this question. The case of Shafher v. State of Ohio, 20 Ohio, 1, was a criminal case, and the question involved not precisely the same; yet in the opinion Ranney, J., gives the reasons for the validity of marriages consummated below the age of majority, but above the age of consent, and discusses the doctrine of public policy, commending the wisdom of the statute.
In the case of Holtz v. Dick, 42 Ohio St., 23, it was held that the absence of parental consent is un *18 important so far as the validity of marriage is concerned.
The common pleas court in this case entered a decree for the defendant, based on the ground that the service was defective, and also on the ground that the facts stated in the petition did not entitle the plaintiff to the relief sought; and I think this decree was right, under the authorities.
It is a case where the sympathy of the court would naturally be, and is, with the plaintiff, and if it were possible for me to agree with the majority opinion I should be glad to do so; but in view of the holdings of the courts I am not able to bring my mind to the conclusion reached by the majority.
Kinkade, J.
In view of the statements in the dissenting opinion, and the authorities there cited, I desire to say, with respect to one ground that is mentioned as the ground of the decision of the court of common pleas, to-wit, a lack of sufficient service in the case, that, so far as this court is informed on that subject, it is to the effect that the court of common pleas considered this, in effect at least, an action for divorce, and that consequently the provisions of the statute with respect to service must be distinctly followed and that an entry of appearance was not a sufficient substitute therefor. It certainly needs no authority or discussion to establish the fact that in an action of this-character, to annul a contract, the defendant may enter his appearance in court in the way provided by statute, regardless of the nature of the contract.
It is said by some courts that the marriage of a female over sixteen and under eighteen is quite *19 as valid without the consent of the parents as with it, and it is remarked in opinions following that line that the sole and only purpose of consent is to lay the foundation for the criminal prosecution of the person who issues the license or solemnizes the marriage of a female under eighteen without the parental consent provided for in the statute.
If that is true, it seems singular indeed that the legislature did not provide, in the same section requiring this consent, for the punishment of the officer. In fact, if the procuring of the consent had no purpose at all except to furnish the ground for a criminal prosecution, the provision might better have been in a section of the criminal code by itself, providing that one who issues a license for, or officiates in the solemnizing of, the marriage of a female under age, as stated, should be guilty and punished as therein stated.
It seems to me that this provision of the statute was intended for a very much more wholesome purpose than the one mentioned, although very useful along that line as well. I think the legislature distinctly intended by this provision to throw this additional safeguard around the young, and that in a case like the present, where the parties have never lived together as husband and wife, where there has been no cohabitation between them at any time shown, where they separated immediately after the ceremony was performed, and the contract, if it was a contract, was forthwith repudiated and renounced by the female, who desired not to go as wife with the other party to the contract, but to remain with her parents and act in accord with their desires, this express provision of the statute *20 with respect to the necessity of having the consent of the parents is a provision of substance and importance to be kept in mind in passing upon the question of the right of the female to renounce the contract under the circumstances stated.
It is said that cohabitation on the part of a female past sixteen years of age is not necessary to complete the contract, of marriage. Even if this be conceded, the fact of cohabitation will be found in all cases, with a single exception, in which the subject is discussed, as having an important bearing upon the question of public policy in determining the rights of the parties. It would be very difficult indeed to state or to even imagine a case calling louder for relief than the case at bar.
The cases cited in the 20th Ohio and the 42d Ohio State are not decisive of the question here. It seems very easy to me to account for many of the decisions cited, by facts presented therein quite clearly distinguishable from the facts in the case at bar. As has been stated by my associates, the principle involved is one of great importance. No one will dispute for a moment that the plaintiff in this case, while under eighteen years of age, had she been possessed of a very large fortune, might have made a contract with the defendant, who was of full age, to transfer her entire property to him upon any stated sufficient consideration, and that that would have been a contract which the defendant could not repudiate, without the consent of the plaintiff, but which the plaintiff could promptly have repudiated upon arriving at her majority. In fact any contract, aside from necessaries and a marriage contract, that the plaintiff might have *21 entered into at the age at which it is said she entered into this marriage contract, might have been repudiated by her when she arrived at the age of eighteen.
But it is said that there is something peculiar about the contract of marriage of an infant that makes the repudiation of it, upon arriving at majority, an act contrary to public policy, notwithstanding the fact that the parties to the contract have never cohabited and never recognized each other as husband and wife from the time the ceremony was performed; and that, therefore, although the contract be the most important contract known to humankind, and the most far-reaching in its consequences, and particularly so with respect to the female, it may not be repudiated on arriving at majority, although it has never been recognized or acted upon by the parties since the time it was entered into.
Confining what I have stated to the case at bar, and not intending what I have stated to apply to other cases presenting different facts, it seems entirely clear to me that if the decree were other than as directed in the opinion of Judge Chittenden it would not be in furtherance of public policy, but would be squarely in the face of, and against, public policy.
For the reasons stated, I concur in the decree annulling the marriage contract entered into between the parties.