# JUNE TERM, 1920.

## PEOPLE v. PIZZURA.

1. RAPE—HUSBAND AND WIFE.

    A man cannot be guilty of an actual rape upon his wife.

2. MARRIAGE—COMMON-LAW MARRIAGE VALID.

    A common-law marriage in Michigan is valid and binding upon the parties.

3. SAME—MARRIAGE A CONTRACT—CONSENT ESSENTIAL.

    Under 3 Comp. Laws 1915, § 11363, marriage, so far as its validity in law is concerned, is a civil contract, to which the consent of parties capable in law of contracting is essential.

4. SAME—BINDING UPON PARTY CAPABLE OF CONSENTING.

    While 3 Comp. Laws 1915, § 11362, fixes the age of consent of both parties, a marriage is binding upon one capable of contracting marriage, although the other party is under the age fixed in the statute.

5. RAPE—STATUTORY RAPE — HUSBAND AND WIFE — COMMON-LAW MARRIAGE A DEFENSE.

    A common-law marriage between a man over the age of consent and a woman under the age, although voidable at her instance, where she has not repudiated the marriage, *held*, valid, so that intercourse between the parties would not sustain a charge of statutory rape against the husband, under 3 Comp. Laws 1915, § 15211.

Exceptions before judgment from recorder's court of Detroit; Jeffries (Edward J.), J. Submitted April 16, 1920. (Docket No. 120.) Decided June 18, 1920.

Francisco Pizzura was convicted of statutory rape. Reversed, and defendant discharged.

On validity of marriage of persons of nonage, see notes in 22 L. R. A. (N. S.) 1202 and L. R. A. 1916C, 740.

On effect of statute fixing age of consent in defining statutory rape as determining age of consent for marriage, see note in 21 L. R. A. (N. S.) 847.

*Cosimo M. Minardo* (*J. Shurly Kennary*, of counsel), for appellant.

*Matthew H. Bishop*, Prosecuting Attorney, and *Van H. Ring*, Assistant Prosecuting Attorney, for the people.

MOORE, C. J. From a conviction of the defendant of the offense of statutory rape the case is brought here upon exceptions before sentence. There is very little dispute as to the facts: The defendant and Anna Pizza became acquainted in the city of Detroit some time during the month of June, 1918. Within a short time thereafter she and the defendant, Francisco Pizzura, eloped and began to live together. Shortly thereafter the parents of the girl went to the home of the defendant and induced them to return to the house of the parents of the girl in the city of Detroit, where the young people continued to live together with the knowledge and consent of the parents, from that time until the defendant was inducted into the military service. On November 28, 1918, while the defendant was in the army at Camp Custer, he returned to Detroit on a furlough and went to the Pizza home, remaining there with Anna Pizza all night with the knowledge and consent of her parents, and had intercourse with her at that time. The charge laid in the information is that the intercourse complained of was committed on the 28th day of November, 1918. The testimony shows that Anna Pizza and the defendant represented themselves as husband and wife among their neighbors and acquaintances.

The statute under which the complaint is made is section 15211, 3 Comp. Laws 1915.

The trial judge charged the jury in part as follows:

"Inasmuch as the age of consent to marriage, and the age of the complainant being less or under the full age of sixteen, I charge you, gentlemen of the jury,

that this complaining witness in this case was unable to enter into the contract of marriage, either a common-law marriage or a ceremonial marriage under the proper authorities of the State."

Section 15211, 3 Comp. Laws 1915, reads:

"If any person shall ravish and carnally know any female of the age of sixteen years, or more, by force and against her will, or shall unlawfully and carnally know and abuse any female under the full age of sixteen years, he shall be punished by imprisonment in the State prison for life, or for any such period as the court in its discretion shall direct, and such carnal knowledge shall be deemed complete upon proof of penetration only."

The question naturally arises, Did the defendant "unlawfully and carnally know and abuse" Miss Pizza.

In 22 R. C. L. at page 1175, it is said:

"A man cannot himself be guilty of an actual rape upon his wife. One of the main reasons for this is the matrimonial consent which she gives when she assumes the marriage relation, and which the law will not permit her to retract in order to charge her husband with the offense." Citing many cases which support the text.

Section 11363, 3 Comp. Laws 1915, reads:

"Marriage, so far as its validity in law is concerned, is a civil contract, to which the consent of parties capable in law of contracting, is essential."

It has been repeatedly held in this State that a ceremonial marriage is not essential to its validity, and that a common-law marriage, when shown, binds the parties to it.

In *Hutchins* v. *Kimmell*, 31 Mich. 126 (18 Am. Rep. 164), Justice COOLEY, speaking for the court, in discussing the subject of a common-law marriage, said in part:

"But had the supposed marriage taken place in this

State, evidence that a ceremony was performed ostensibly in celebration of it, with the apparent consent and co-operation of the parties, would have been evidence of a marriage, even though it had fallen short of showing that the statutory regulations had been complied with, or had affirmatively shown that they were not. Whatever the form of ceremony, or even if all ceremony was dispensed with, if the parties agreed presently to take each other for husband and wife, and from that time lived together professedly in that relation, proof of these facts would be sufficient to constitute proof of a marriage binding upon the parties, and which would subject them and others to legal penalties for a disregard of its obligation. This has become the settled doctrine of the American courts; the few cases of dissent or apparent dissent being borne down by a great weight of authority in favor of the rule as we have stated it. *Fenton* v. *Reed*, 4 Johns. 52 (4 Am. Dec. 244); *Jackson* v. *Winne*, 7 Wend. 47 (22 Am. Dec. 563); *Starr* v. *Peck*, 1 Hill, 270; *Rose* v. *Clark*, 8 Paige, 574; *In re Taylor*, 9 Paige, 611; *Clayton* v. *Wardell*, 4 N. Y. 230; *Cheney* v. *Arnold*, 15 N. Y. 345 (69 Am. Dec. 609); *O'Gara* v. *Eisenlohr*, 38 N. Y. 296; *Pearson* v. *Howey*, 11 N. J. Law, 12; *Hantz* v. *Sealy*, 6 Bin. 405; *Commonwealth* v. *Stump*, 53 Pa. St. 132 (91 Am. Dec. 198); *Newbury* v. *Brunswick*, 2 Vt. 151 (19 Am. Dec. 703); *State* v. *Rood*, 12 Vt. 396; *Northfield* v. *Vershire*, 33 Vt. 110; *Duncan* v. *Duncan*, 10 Ohio St. 181; *Carmichael* v. *State*, 12 Ohio St. 553; *State* v. *Patterson*, 2 Ired. 346 (38 Am. Dec. 699); *Londonderry* v. *Chester*, 2 N. H. 268 (9 Am. Dec. 61); *Keyes* v. *Keyes*, 2 Fost. (N. H.) 553; *Bashaw* v. *State*, 1 Yerg. 177; *Grisham* v. *State*, 2 Yerg. 589; *Cheseldine's Lessee* v. *Brewer*, 1 H. & McH. 152; *State* v. *Murphy*, 6 Ala. 765 (41 Am. Dec. 79); *Potier* v. *Barclay*, 15 Ala. 439; *Dumaresly* v. *Fishly*, 3 A. K. Marsh, 368; *Graham* v. *Bennet*, 2 Cal. 503; *Case* v. *Case*, 17 Cal. 598; *Patton* v. *Philadelphia*, 1 La. Ann. 98; *Holmes* v. *Holmes*, 6 La. 463; *Hallett* v. *Collins*, 10 How. 174."

See *Peet* v. *Peet*, 52 Mich. 464; *Supreme Tent K. O. T. M.* v. *McAllister*, 132 Mich. 69; *Reaves* v. *Reaves*, 2 L. R. A. (N. S.) 353 (15 Okla. 240, 92 Pac. 490).

The defendant was sworn in his own behalf. He testified:

"My name is Frank Pizzura. I have lived in America nine years. Before I went to the army I worked at the Cadillac about a year and a half. I have never been arrested and convicted before. I am 28 years old. Anna Pizza, the complaining witness in this case, is my wife. I lived with her at my father-in-law and mother-in-law's residence. My father-in-law and mother-in-law went with me to the county building to get a license. The priest on Fort street has the license now. I lived with Ann until I was sent to the army. When I came back on Thanksgiving day I went to the home of my wife, her mother was home and told me to remain there. I lived with Anna Pizza as husband and wife and I am willing to marry her."

Cross-examination, by Mr. Ring:

"On the 28th day of November I came to Detroit from Camp Custer and went to the home of Anna Pizza. I had intercourse with her that night."

Anna Pizza and her father and mother were all witnesses and swore to a state of facts which would establish beyond peradventure a common-law marriage if both of the young people had been of the age of consent.

As one of the parties was under the age of consent, Was the marriage void as to both of them or only voidable as to the one who was under the age of consent? Section 11362, 3 Comp. Laws 1915, reads:

"Every male who shall have attained the age of eighteen years, and every female who shall have attained the full age of sixteen years, shall be capable in law of contracting marriage, if otherwise competent."

Should this language be so interpreted as to hold that a marriage ceremony does not have any effect upon the one who is capable of making the contract? Section 11367 3 Comp. Laws 1915, reads in part as follows:

"No insane person, idiot or person who has been afflicted with syphilis or gonorrhoea and has not been cured of the same, shall be capable of contracting marriage."

The section is a long one and we shall not quote the rest of it, but it nowhere states that a male person under the age of 18 years and a female person under the age of 16 years shall be incapable of marriage.

In *Meister* v. *Moore*, 96 U. S. 78, it is said:

"Marriage is everywhere regarded as a civil contract. Statutes in many of the States, it is true, regulate the mode of entering into the contract, but they do not confer the right. Hence they are not within the principle that, where a statute creates a right and provides a remedy for its enforcement, the remedy is exclusive. No doubt, a statute may take away a common-law right; but there is always a presumption that the legislature has no such intention, unless it be plainly expressed. A statute may declare that no marriages shall be valid unless they are solemnized in a prescribed manner; but such an enactment is a very different thing from a law requiring all marriages to be entered into in the presence of a magistrate or a clergyman or that it be preceded by a license, or publication of banns, or be attested by witnesses. Such formal provisions may be construed as merely directory, instead of being treated as destructive of a common-law right to form the marriage relation by words of present assent. And such, we think, has been the rule generally adopted in construing statutes regulating marriage. Whatever directions they may give respecting its formation or solemnization, courts have usually held a marriage good at common-law to be good notwithstanding the statutes, unless they contain express words of nullity."

In *Parton* v. *Hervey*, 1 Gray, 119, the court construing the Massachusetts statute said in part:

"In the absence of any provision declaring marriages not celebrated in a prescribed manner, or between parties of certain ages, absolutely void, it is held that

all marriages regularly made according to the common law are valid and binding although had in violation of the specific regulations imposed by statute."

See *Glenn* v. *Hollopeter*, 21 L. R. A. (N. S.) 847 (52 Wash. 41, 100 Pac. 159), and *Hunt* v. *Hunt*, 22 L. R. A. (N. S.) 1202 (23 Okla. 490, 100 Pac. 541).

The question, however, is not a new one in this State. In *People* v. *Slack*, 15 Mich. 193, the court after referring to the then existing statutes which correspond with sections 11362 and 11393, 3 Comp. Laws 1915, used the following language:

"It is insisted by the defendant that, under the statute quoted, either party is at liberty to annul the marriage at any time before the one under the age of legal consent shall attain it, and that either is then at liberty to marry again. I do not think this is the law under our statute.

"At the common law, it was undoubtedly the rule that the right to annul the marriage continued with one party as long as it did with the other. Reeves Dom. Rel. p. 200. But as this subject is fully covered by statutory provisions in this State, we have only to see whether those provisions have introduced any change in this particular. That they were intended to do so, seems to me very clear.

"If we look no further than the statute above quoted, it is difficult, I think, to avoid the conclusion that the separation spoken of is something other than the abandonment by the party over age of the person who is within the age of consent, and who will usually be induced to enter into the marriage by the arts and solicitations of the other. There are so many and so powerful reasons against a rule which leaves females who have reached the age of puberty, but are not yet sixteen, at the mercy of the wiles of designing men, who after enticing them into a marriage with all the solemnities of the law, may then desert and abandon them with impunity, that we are not disposed lightly to conclude that it was designed to adopt it as a statutory rule. And I do not think apt words are employed for the purpose, if such was the intent. Where a

man competent to contract marriage enters into the relation with one who lacks the capacity to give binding assent, and after a brief cohabitation, against her will abandons her, the act is not properly a separation, but a desertion; and the latter is the proper term to apply to it. And as such a desertion would commonly be a great wrong to the female, and shock the moral sense of the community, we should naturally look in the statute for penal provisions, rather than for those which would not only exempt the wrongdoer from any punishment, but allow him with like impunity to repeat the process elsewhere so often as he may find a confiding female who will yield to the proposals he makes, accompanied as they are with all the appearance and form of honesty and honor. For the marriage being only voidable, and not absolutely void, all the consequences of a legal marriage flow from it until it is avoided; it could not be punished as seduction, nor has any statute in any way attempted to make it criminal. I do not think this section can fairly be held to protect such a desertion; but on the contrary, that it refers only to the separations which are brought about by the mutual consent of both, or by the refusal of the party under legal age to assent to further cohabitation."

At this time it may be well to ask a few questions. Suppose without any decree of divorce and with Miss Pizza still desiring to hold the defendant as her husband, he should go through the form of a ceremonial marriage with a female person of the age of consent, could he not be convicted of the offense of bigamy? The case of *People* v. *Slack, supra,* answers the question in the affirmative. Suppose Miss Pizza, instead of being under the age of 15 years, had been only two days under the age of consent when she began her relations with defendant and they continued to regard each other as husband and wife, could the husband have been convicted of statutory rape for the act of intercourse which occurred two days before his wife was 16 years old; or could he in the last supposed case though she desired to continue as his wife repudiate

the role of husband and say to her: "You are no wife of mine." To answer these two supposed cases in the affirmative shocks one's sense of justice and right. When the defendant began and continued his relations with Miss Pizza he was of consenting marriageable age and as to him the marriage was valid. Their relations were voidable only at the option of Miss Pizza. She has not desired to repudiate the marriage contract, but, on the contrary, she desires, so far as the record shows, to hold the defendant to it.

We think the court erred in his charge to the jury and that the conviction should be reversed. As there is no dispute as to the facts, we think the defendant should be discharged.

STEERE, BROOKE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.