NUECES VALLEY TOWNSITE COMPANY V. SAN ANTONIO, UVALDE & GULF RAILROAD COMPANY.

No. 5924.   Decided December 13, 1933.
Motion for rehearing overruled March 21, 1934.
(67 S. W., 2d Series, 215.)

*Dodson & Ezell,* of San Antonio, for plaintiff in error.

On proposition that the law of 1889 is valid see cases cited in the opinion of the Court.

The decree entered in this cause is sufficiently definite and certain to enable the appellent (defendant in error) to comply therewith. The decree is complete and informs the appellant precisely what it is required to do, and the court has the power from time to time to take such supplemental proceedings as may become necessary to carry out such decree and to make the same effective. Texas & St. L. Ry. Co. v. Robards, 60 Texas, 545; Ohio & Miss. Ry. Co. v. McCarthy, 96 U. S. 259; Williston on Contracts, secs. 1953-56, 1959, 1963; Board of Education v. Townsend, 63 O. St., 514, 59 N. E., 223; Merchants Life Ins. Co. v. Griswold (Civ. App.), 212 S. W.; 807; City of San Antonio v. San Antonio Irr. Co., 118 Texas, 154, 12 S. W. (2d) 546.

*Andrews, Streetman, Logue & Mobley, W. L. Cook, Harry R. Jones, Robt. H. Kelley,* and *Andrews, Kelley, Kurth & Campbell,* all of Houston, and *F. C. Davis, Marshall Eskridge, Davis*

*& Eskridge* and *Eskridge & Groce,* all of San Antonio, for defendant in error.

In the absence of sufficient definiteness in the contract and of sufficient definite instructions in the decree, a defendant ordered to specifically perform and affected by prohibitory and mandatory injunctions on aid of specific performance, cannot intelligently or fairly adjust its conduct to meet the situation presented and a decree thus lacking definiteness and certainty is erroneous and unenforcible. Salt Company v. Texas Short Line R. Co., 99 Texas, 434, 90 S. W., 863, 3 L. R. A. (N. S.) 828; Fort Worth Acid Works v. City of Fort Worth, 248 S. W., 822; Missouri, K. & T. Ry. Co. v. Colburn, 90 Texas, 231, 38 S. W., 153; Missouri, K. & T. Ry. Co. v. State, 275 S. W., 673.

The decree of the court would impose a direct burden upon interstate commerce. Addyston Pipe & Steel Co. v. United States, 175 U. S., 211, 20 Sup. Ct., 96, 44 L. Ed., 136; Philadelphia, B. & W. Ry. Co. v. Schubert, 224 U. S., 603, 32 Sup. Ct., 589, 65 L. Ed., 911; Louisville & Nashville Ry. Co. v. Mottley, 219 U. S., 467, 55 L. Ed., 297, 31 Sup. Ct., 265.

Mr. Justice PIERSON delivered the opinion of the Court.

In 1913, for a valuable consideration, the San Antonio, Uvalde & Gulf Railroad Company entered into an agreement and contract with the Nueces Valley Townsite Company to locate and establish the permanent division headquarters of said railroad, and to permanently locate and operate the machine shops of the railroad, in the town of North Pleasanton. This contract was evidenced by a deed conveying twenty-four acres of land by the Townsite Company to the Railroad Company, and the consideration for same is stipulated in said deed as follows:

"For and in consideration of the sum of ten dollars ($10.00), to us in hand paid by the San Antonio, Uvalde & Gulf Railroad Company, and in consideration of the location and establishment of the permanent division headquarters of the San Antonio, Uvalde & Gulf Railroad Company, and the permanent location and operation of machine shops adequate to the needs of the said San Antonio, Uvalde & Gulf Railroad system as now operated embracing approximately 320 miles of main line road.

"It is, however, not intended to prevent the said railroad company from establishing such supplemental repair shops at such other points on the said railroad as may be required by the needs of the said road."

The Railroad Company accepted the property under this

deed and proceeded to locate and establish its permanent division headquarters and machine shops on the tract of land. These headquarters and machine shops were maintained under this contract in North Pleasanton until about February 1, 1926, when, after the controlling interest of the San Antonio, Uvalde & Gulf Railroad Company had been acquired by the New Orleans, Texas & Mexico Railway Company under authorization of the Interstate Commerce Commission, the defendant San Antonio, Uvalde & Gulf Railroad Company began to move away certain officials and employees of the division headquarters, machine shops, etc., until at the time of the trial of this case only fourteen such employees were stationed at North Pleasanton.

This case originated as a suit for an injunction against the San Antonio, Uvalde & Gulf Railroad Company brought by P. A. Vance and others, residents of North Pleasanton, seeking to enjoin the said Railroad Company from removing its division headquarters, machine shops, etc., from North Pleasanton and to require it to perform its contract. The plaintiff in error intervened in that suit, set up its contract, alleged its breach, and asked for a specific performance of its contract; or, in the alternative, damages for its breach. At the conclusion of the testimony the trial court withdrew the case from the jury in so far as the original plaintiffs were concerned, and no appeal has been taken from this action. The case was submitted to the jury upon special issues, and the jury found in answer thereto that the Railroad Company had since, about February 1, 1926, substantially failed to maintain its division headquarters and its machine shops for its railroad in the town of North Pleasanton; that the reasonable market value of intervener's lots in North Pleasanton was $80,550.00, immediately preceding the defendant's failure to so maintain its division headquarters and machine shops, and that the value of said lots was $13,-425.00 at the time the case was tried; that the difference of value of the lots was the direct result of the defendant's failure to maintain its division headquarters and machine shops in North Pleasanton; that the reasonable market value of the twenty-four acres deeded to the Railroad Company by the Townsite Company at the time the contract was made, when the deed was accepted and when the defendant took possession thereof, was $24,000.00, and that enforcement of the contract as made would not be an undue burden on interstate commerce.

Upon this verdict of the jury the trial court rendered judgment that plaintiff's take nothing by their suit, and awarded to the Townsite Company as against the Railroad Company speci-

fic performance of its contract. The Railroad Company perfected its appeal to the Court of Civil Appeals for the Fourth Supreme Judicial District, and that court reversed the judgment of the trial court as to specific performance; but inasmuch as the jury had found that the difference in value of the Townsite Company's property amounted to $67,000.00, and that this diminution of value was a direct result of the Railroad Company's breach of its contract, the Court of Civil Appeals rendered judgment for the Townsite Company in the amount of $67,000.00. On motion for rehearing, however, a majority of the Court of Civil Appeals reached the conclusion that the question of damages was not properly before them, because there had been no error assigned by the Townsite Company to the action of the trial court in not awarding damages. See 34 S. W. (2d) 391.

The Townsite Company applied to this Court for a writ of error, which was granted on May 16, 1931.

As stated by plaintiff in error in its aplication for writ of error, only two questions are presented, to-wit:

"I. Plaintiff (plaintiff in error) having fully performed its obligations of a valid contract with the defendant (defendant in error) whereby it contracted to establish and maintain its machine shops and roundhouse at North Pleasanton, did Article 6277, R. S. 1925, entitle plaintiff (plaintiff in error) to a judgment for specific performance of that contract?

"II. If the Court of Civil Appeals correctly reversed the judgment entered for specific performance, which was first prayed for by plaintiff (plaintiff in error), should said court pursuant to Art. 1856, R. S. 1925, have then rendered judgment in favor of plaintiff (plaintiff in error) on its alternative prayer for damages, the jury having found in its favor upon all issues necessary to support such judgment, but plaintiff (plaintiff in error) having assigned no error to the entry of said judgment for specific performance?"

█ The Twenty-first Legislature in 1889 enacted the following statute:

Section 1. *Be it enacted by the Legislature of the State of Texas:* That every railroad company chartered by this State, or owning or operating any line of railway within this State, shall keep and maintain permanently its general offices within the State of Texas, at the place named in its charter for the locating of its general offices; and if no certain place is named in its charter where its general offices shall be located and maintained, then said railroad company shall keep and main-

tain its general offices at such place within this State where it shall have contracted or agreed, or shall hereafter contract or agree to locate its general office for a valuable consideration; and if said railroad company has not contracted or agreed for a valuable consideration to maintain its general office at any certain place within this State, then such general offices shall be located and maintained at such place on its line in this State as said railroad companies may designate to be on its line of railway. And such railroads shall keep and maintain their machine shops and roundhouses, or either, at such place or places as they may have contracted to keep them for a valuable consideration received; and if said general offices and shops and roundhouses, or either, are located on the line of a railroad in a county which has aided said railroad by an issue of bonds in consideration of such location being made, then said location shall not be changed; and this shall apply as well to a railroad that may have been consolidated with another as to those which have maintained their original organization." Acts 1889, p. 130.

This Act has been carried forward into every subsequent revision of our statutes without substantial change, and appears in the Revised Statutes of 1925 as Arts. 6275-6277.

The validity and construction of this Act have been before this Court in numerous cases. In the case of City of Tyler v. St. Louis S. W. Ry. Co., 99 Texas, 491, it appeared that the St. Louis S. W. Ry. Co. had contracted for a valuable consideration received by it, with the City of Tyler and its citizens, to locate, keep, and maintain its machine shops and roundhouses at that city. The Supreme Court in that case held that the statute was valid, and enjoined the Railway Company from removing its shops and roundhouses from the City of Tyler. The Court, through Associate Justice Brown, said:

"The statute provides that the railroad company 'shall keep and maintain its machine shops and roundhouses at such place or places as they may have contracted to keep them for a valuable consideration received.' Such explicit language does not admit of construction, nor does it require argument to enforce its meaning. The contract and the law operate to fix beyond the control of the railroad company the place at which its machine shops and roundhouses must be kept and maintained." City of Tyler v. St. Louis S. W. Ry. Co., 99 Texas, 491, 500.

In the case of International & G. N. Ry. Co. v. Anderson County, 106 Texas, 60, which was an appeal from an order granting a temporary injunction, restraining the Railway Com-

pany from removing its machine shops from the City of Palestine, it appeared that the predecessor of the I. & G. N. Ry. Co. had contracted for a valuable consideration to locate and forever maintain its said shops in the City of Palestine. This Court, in an opinion by Mr. Justice Phillips, held that the contract was binding on the I. & G. N. Ry. Co., and further held the statute valid, and affirmed the judgment of the Court of Civil Appeals enjoining the removal of the shops from Palestine. This case was later tried on the merits, and the injunction was made permanent. The Railway Company appealed to the Court of Civil Appeals at Texarkana, and that Court, through Judge Levy, delivered a very able and exhaustive opinion, affirming the judgment of the trial court. It was held in that opinion that the Act of 1889 was a valid exercise of the police power in declaring it to be the policy of the State of Texas for a railroad company to locate and maintain its general offices, or machine shops, in a particular place, and that under its contract entered into for a valuable consideration it was the duty and obligation of the I. & G. N. Ry. Co. to maintain its shops at Palestine. In this regard, Judge Levy's opinion reads:

"If the power exists in the state, as it does, to regulate and reasonably govern operation of the road in public interest and convenience, the necessity or expediency and economic reasons for so doing are purely questions for the Legislature, and not for the courts. The location of the principal office, shops and roundhouses being a subject-matter of public interest, legislation in respect thereto would be within the police power of the state to promote public convenience or good. The police power of the state extends, reasonably exercised, to promote the public convenience. Chicago, B. & Q. Ry. Co. v. Illinois, 200 U. S., 561, 26 Sup. Ct., 341, 50 L. Ed., 596, 4 Ann Cas., 1175; Lake Shore & M. Ry. Co. v. Ohio, 173 U. S., 292, 19 Sup. Ct., 465, 43 L. Ed., 704; Eagle Ins. Co. v. Ohio, 153 U. S., 446, 18 Sup. Ct., 868, 38 L. Ed., 780. And location of the principal office being within the police power of the state, previous regulation would not prevent the operation of the police power, further exercised to promote the public convenience or good. In application of that principle the state, in Louisville & N. Ry. Co. v. Kentucky, 161 U. S., 677, 16 Sup. Ct., 714, 40 L. Ed., 849, was held to have the power to forbid the consolidation of competing corporations, though the right to consolidate should be held to be given by the charter, and though the charter contained no reservation of power so to do. To the same effect is Pearsall v. Great Northern Ry. Co., 161 U. S., 646, 16 Sup.

Ct., 705, 40 L. Ed., 838. It was held in State v. Southern Pac. Ry. Co., 24 Texas, 122, that it was within the constitutional power of the state to impose the duty upon executive officers of the company to reside within the state, though the law was passed after the grant of the charter. The principle of law of this latter case has direct application to the instant legislative provision. A difference in principle is not perceived to be between requiring the president and a majority of the directors to have residence within the state and requiring the governing officers of the corporation to have residence in a particular locality within the state on the line of railway. A legislative provision, requiring location of general offices at a fixed locality, in its last analysis means only that the executive and governing officers of the corporation as such shall have residence at a particular locality within the state on its line of railway. The same principle would have application to shops and roundhouses, which are but a part of the instrumentalities of operation of the railway. Holding, as we do, that the act is a regulatory one in public interest and within the operation of the police powers of the state, it is not therefore assailable as violative of the federal constitution upon the ground of impairing the obligation of charter contract." I. & G. N. Ry. Co. v. Anderson County, 174 S. W., 305, 317, 318.

A writ of error was refused by the Supreme Court in this case. The case was then taken to the Supreme Court of the United States, and that court affirmed the judgment of the Texas courts. International & G. N. Ry. Co. v. Anderson County, 246 U. S., 424, 62 L. Ed., 807, 38 Sup. Ct., 370.

Upon the validity and construction of the Act of 1889, the United States Supreme Court, through Mr. Justice Holmes, said:

"It is contended that the Office-Shops Act of 1889 does not touch the plaintiff in error by its terms, and that if it be construed to do so it is unconstitutional. On the construction of the act it seems to us that there can be no doubt. It is true that the provision requiring the general offices to be maintained at the place where the railroad had contracted to keep them is conditioned on no place being named in the charter; but of course this does not mean that articles framed under a general law can get rid of contracts that otherwise would bind, and in our opinion it is equally plain that no distinction was intended between the contract by the present road and one by its predecessor, if the office and shops 'are located on the line of a railroad in a county which has aided said railroad by an issue of bonds in consideration of such location being made.' 'Then,'

the statute says, 'said location shall not be changed.' The construction of the act by the state court is beyond criticism upon this point.

"It is said that the act, so construed, would infringe the constitutional rights of the parties to the mortgage of 1881, which the plaintiff in error took by foreclosure. But it will be remembered that the mortgagor, under the law then in force, merely had succeeded to the original contractors, freed from their unsecured debts, no doubt, but, it well might be held, not freed from the obligation in question. Also it was found by the courts below that the sale under which the mortgagor took in 1879 was not a bona fide sale, and so was not a sale that put the purchaser in a position other than that of mortgagor. Apart from these considerations we should be slow to say that it was not within the power of a state legislature dealing with a corporation of the state to fix the place of its domicil and principal offices, in the absence of other facts than those appearing in this case. But, furthermore, when the Office-Shops Act was on the statute book the plaintiff in error took out a charter under general laws that expressly subjected it to the limitations imposed by law. It is said that this does not make the plaintiff in error adopt an otherwise unconstitutional statute. But even if, contrary to what we have intimated, the act could not otherwise have affected those particular corporations, it was a law upon the statute books and was far from a mere nullity, *and if it was made a condition of incorporation that this restriction should be accepted, the plaintiff in error cannot complain.* Interstate Consol. Street R. Co. v. Massachusetts, 207 U. S., 79, 52 L. Ed., 111, 28 Sup. Ct. Rep., 26, 12 Ann. Cas., 555. We agree with the state courts that the condition was imposed." (Italics ours.) 246 U. S., 432, 433, 62 L. Ed., 816.

In the case of Houston & T. C. R. Co. v. City of Ennis, 201 S. W., 256, the Court of Civil Appeals at Dallas affirmed a judgment of the District Court of Ellis County "enjoining and restraining the railroad company perpetually from ceasing to keep or maintain and from removing or causing to be removed from the City of Ennis the superintendent and assistant superintendent of trains and chief dispatchers with their offices and office forces described in the judgment." This case followed the law as pronounced in the Anderson County Case and the Tyler Case. Again, this Court approved this statute and the construction placed upon it by refusing a writ of error.

In the light of these decisions it is hardly an open question

that the Act of 1889 is a valid and constitutional law when tested either by the Federal or State Constitution.

■■ It is urged in this case that the foregoing decisions are not applicable because the decision of the trial court, which has become final, that the citizens of North Pleasanton had no right of action, eliminated the "public interest in the maintenance and operation of the facilities in question." Manifestly, such a contention is based upon an erroneous interpretation of those decisions.

In compelling the San Antonio, U. & G. Railroad Company in this case to "keep and maintain" its division headquarters and machine shops in North Pleasanton, the Court is merely decreeing that the Company obey a general statute declaring the public policy of the State, as well as comply with the obligations of a contract. The fact that the citizens of North Pleasanton did not appeal from the order of the trial court did not eliminate the public interest from the case. The contract with the plaintiff in error made applicable the statute. No judgment, such as that of the Court of Civil Appeals, can be affirmed, which is contrary to the public policy of the State as declared by a valid statute. City of Tyler v. St. Louis S. W. Ry. Co., 99 Texas, 491, 500.

■ The various constitutional objections raised by the defendant in error as a bar to the enforcement of the statute have been considered at length. It would seem that since the defendant in error accepted its charter from the State of Texas at a time when the Act of 1889 was on the statute books, it took the charter subject to this statutory restriction, just as if it were incorporated in that charter. International & G. N. Ry. Co. v. Anderson County, 246 U. S., 424, 62 L. Ed., 807. This being true, the Railroad Company cannot complain that the statute has deprived it of its property without due process.

It is contended that the enforcement of the decree would be an undue burden upon interstate commerce. The jury found in this case that it would not impose such burden on interstate commerce. In the Anderson County Case the Supreme Court of the United States, in disposing of this exact contention, said:

"It is said that the restriction imposes a burden uopn commerce among the states, since the road concerned has expended and now is largely engaged in such commerce. The jury found that it imposed no such burden, upon an issue submitted to them in accordance with the desire of the plaintiff in error, although not in the form that it desired. So far as the question depended upon the testimony adduced, the verdict must be

accepted; and although no doubt there might be cases in which this court would pronounce for itself, irrespective of testimony, whether a burden was imposed, we are not prepared to say that in this instance the state has transcended its powers. The burden, if any, is indirect." 246 U. S., 434-5, 62 L. Ed., 816.

■ The Railroad Company contends that the contract and the decree of the trial court are so indefinite and uncertain as to make it practically impossible for the Company to adjust its conduct in accordance therewith, and that the Court should not undertake to enforce the specific performance of the contract made, because it would entail constant supervision of the Court over a long period of time.

The decree follows closely the terms of the contract, and both have application to matters under consideration, i.e., the maintenance and operation of the division headquarters and machine shops at North Pleasanton by the San Antonio, Uvalde & Gulf Railroad Company. We think the decree in this case is sufficiently definite and certain to guide the Railroad Company in obeying it. The Court will not anticipate such difficulty in securing obedience to the decree as to require of it an impractical oversight and control of the Company. City of Tyler v. St. Louis S. W. Ry. Co., 99 Texas, 491.

■ It is strenuously argued by the defendant in error that the enforcement of the court's decree in this case would have the effect of depriving it of its rights, privileges, and immunities under the Commerce Clause of the United States Constitution, and under the statutes of the United States Congress enacted pursuant thereto, and under valid orders of the Interstate Commerce Commission.

The basis of this contention is that the Interstate Commerce Commission has issued an order approving the acquisition by the New Orleans, Texas & Mexico Railway Company of control of the San Antonio, Uvalde & Gulf Railroad Company, and that such approval was given because of the reasons contained in the report of the Commission to the effect that such acquisition would effect certain economies in the operation of the San Antonio, Uvalde & Gulf Railroad. It is then argued that the moving of the shops was a part of the plan to effect these economies, and thus, if the removal can not be effected, the defendant in error is deprived of the rights under that order. We are unable to approve this contention. The San Antonio, Uvalde & Gulf Railroad Company, before this sale of the controlling interest to the New Orleans, Texas & Mexico Railway Company, was bound under its contract and the Act of 1889

to keep and maintain its shops and roundhouses where it had contracted for a valuable consideration to keep and maintain them, towit, in North Pleasanton. A careful reading of the report of the Interstate Commerce Commission approving the acquisition of the control of this railroad company by the New Orleans, Texas & Mexico Railway Company fails to disclose any intimation that that Commission reached the conclusion that it was in the public interest that the said company not only acquire the control of this railroad company, but also that it was in the public interest and "just and reasonable" that in its control of the acquired railroad company it should not be bound by the contracts of defendant in error and required to observe them and the laws of the State concerning them. In the absence of such express finding, we presume that the Interstate Commerce Commission found that it was in the public interest, and reasonable and just under all the attendant circumstances, that the New Orleans, Texas & Mexico Railway Company acquire the defendant in error railroad company burdened with the obligations imposed upon it under the laws of the State under which it was incorporated.

The Federal statute which gives the Interstate Commerce Commission authority to permit one carrier to acquire control of another, provides that that may be done when such acquisition "will be in the public interest"; and, further, that the Interstate Commerce Commission may approve such acquisition "for such consideration and on such terms and conditions as shall be found by the Commission to be just and reasonable in the premises." U. S. C. A., Title 49 Chapter 1, Sec. 5 (2).

This latter clause applies, we think, to the contractual interests of those who on account of their private rights are interested in the "consideration," and was intended to provide that the "terms and conditions" should be "just and reasonable" with respect to such rights. This clause doubtless also would have application to stockholders, bondholders, creditors, and others with contractual rights. Thus Congress has declared that when control over one carrier is acquired by another, it must be (1) in the public interest, and (2) that the consideration and terms and conditions of such acquisition must be just and reasonable to those whose private rights are affected.

The order of the Interstate Commerce Commission authorizing the New Orleans, Texas & Mexico Railway Company to acquire the stock and bonds of defendant in error and control over its management, does not authorize the said company to violate and vacate the contractual duties and obligations of de-

fendant in error; nor does the order itself have that effect.

It is clear, we think, that it is the policy of the law as enacted by Congress not to authorize the Interstate Commerce Commission, directly or by its orders granted to a purchasing carrier, to deprive holders of contracts of their contractual rights, or to impair them. The Interstate Commerce Act bears evidence of that fact, and same is restated and emphasized especially with respect to the location or maintenace of offices, shops, or roundhouses, in the recent enactment of the EMERGENCY RAILROAD TRANSPORTATION ACT, 1933. Section 11 reads as follows:

"Sec. 11. Nothing in this title shall be construed to relieve any carrier from any contractual obligation which it may have assumed, prior to the enactment of this Act, with regard to the location or maintenance of offices, shops, or roundhouses at any point."

Even if we assume that the Interstate Commerce Commission, if properly authorized by an Act of Congress, could constitutionally approve an acquisition agreement between two railroads by which the acquiring railroad would be relieved from performing the contracts of the acquired railroad, and if we should further assume that the Interstate Commerce Commission, on a finding that it was in the public interest and that it was reasonable and just under all the attendant circumstances, could relieve an interstate carrier from burdens imposed by its contracts and the duties imposed by the statutes of a particular State; yet, under the facts disclosed here, the Interstate Commerce Commission has not undertaken to relieve the defendant in error, either from the obligation of its contract, or from the obligation imposed upon it under the Act of 1889. And as it does not appear that this contract and the application of the Act of 1889 impose a direct burden uopn interstate commerce, our duty to enforce that Act is plain; as has been done in the numerous cases cited in this opinion.

Since our decision necessarily results in the affirmance of the judgment of the District Court, it is unnecessary to discuss the power of the Court of Civil Appeals to award damages to the plaintiff in error which it had sought in the alternative when it assigned no error to the District Court's having granted it specific performance.

The judgment of the Court of Civil Appeals is reversed, and that of the District Court is affirmed.

Mr. Associate Justice Thos. B. Greenwood not sitting.