## PORTWOOD v. PORTWOOD.

### No. 1685.

Court of Civil Appeals of Texas. Eastland.

Sept. 24, 1937.

Rehearing Denied Oct. 22, 1937.

Lyndsay D. Hawkins and J. M. Rieger, both of Breckenridge, for appellant. ;

Taylor, Muse & Taylor, of Wichita Falls, and Jo. A. P. Dickson and Rollie Fancher, both of Seymour, for appellee.

LESLIE, Chief Justice.

This suit was instituted by Paul Portwood, acting by and through W. H. Portwood, his father and next friend, to annul a ceremonial marriage theretofore contracted by and between himself and the appellant, Ada Cox Portwood. He alleged the marriage occurred at Walters, Cotton county, Okl., November 25, 1935; that the same was void, and, if not void, voidable under various Oklahoma statutes, and by reason of various facts, fraud, drunkenness, etc.

The several grounds rendering the purported marriage void, or, in the alternative, voidable, as alleged by him, were as follows:

(1) That section 1668 of the Oklahoma Statutes (43 Okl.St.Ann. § 3) in effect at the time of the marriage was violated in that: (a) At the time of the marriage he (appellee) was a minor, 17 years of age; and (b) that as such minor he had no express authority either in person or in writing from either parent or guardian sanctioning his marriage.

(2) That section 1669 of the Oklahoma Statutes (43 Okl.St.Ann. § 4) was violated, in that the license on which the said marriage ceremony was performed was not issued by the judge or clerk of the county court of Cotton county, Okl., but the justice of the peace who performed the ceremony "used a marriage license signed in blank in said courthouse."

(3) That section 1670 of the Oklahoma Statutes (43 Okl.St.Ann. § 5) was violated in that no application for marriage license in writing, signed and sworn to before the judge or clerk of the county court by a person legally competent to make the oath contemplated in said statute, was ever made or filed before the marriage license in question was used. That the appellee who signed the application used in this case did not swear to the same. That by reason of such matters the marriage license was invalid.

(4) That section 1671 of the Oklahoma Statutes (43 Okl.St.Ann. § 6) was violated in that no marriage license as required by said section was used by the justice of

518

the peace in performing the ceremony. That the marriage license used by him had been issued and signed in blank by the county clerk of Cotton county, Okl., acting through a deputy clerk.

(5) That section 1672 of the Oklahoma Statutes (43 Okl.St.Ann. § 7) was violated in that F. T. Wagner, who signed his name to the certificate of marriage as a witness, did not in fact witness the performance of the marriage ceremony, but was absent when same occurred.

(6) That section 677 of the Oklahoma Statutes of 1931 (12 Okl.St.Ann. § 1283) authorized the annulment of a marriage on the ground of want of age or understanding in an action brought by the incapable party, or by his parents or guardian, in the district court of the state of Oklahoma.

(7) That at the time of the marriage appellee "was under the influence of intoxicants * * * to such an extent that he did not and could not understand the effect of a marriage contract and a marriage ceremony· and * * * was incapacitated to understand the effect of his acts and actions. * * *"

In answer to the petition seeking annulment upon said grounds the defendant, appellant here, filed an answer presenting general denial, special pleas by way of denial that the appellee was intoxicated; that there was any omission or misfeasance in connection with the procurement or issuance of the marriage license, performance of the ceremony, signature of the witnesses, return of the license, etc.; and the further plea that long prior to said marriage the Supreme Court and inferior courts of Oklahoma had held that all the above statutes pleaded by the appellant were directory only and not mandatory; and that at the time of the marriage the parties intended to reside in Texas and did not intend to reside in Oklahoma. The appellant further pleaded that the marriage was in any event sufficient as a common-law marriage.

In the appellant's cross-action she sought attorneys' fees in the event the marriage "should be held not absolutely void," etc.

In advance of the trial on the merits, the trial court heard evidence pertaining to the age of the appellee, found him to be a minor at the time of the trial, and thereupon appointed his attorneys of record as guardians ad litem to defend said cross-action upon which he had been cited.

All exceptions urged by either appellee or appellant were overruled and a trial was had before the court and jury. At the conclusion of the testimony the court instructed a verdict against appellant in favor of the appellee "on all the issues in this said cause." A judgment was rendered in accordance with the verdict annulling the marriage and denying the appellant any relief on the cross-action. This judgment is challenged by numerous assignments of error and propositions thereunder.

The first seven propositions relate to infractions of various statutes of Oklahoma, by reason of which the marriage involved should be annulled.

The marriage involved took place in Walters, Cotton county, Okl., at 5:30 a. m., November 25, 1935, and the ceremony was performed by Roy Norman, a justice of the peace. As basis for the annulment, the appellee pleaded sections 1668 and 677 of the Oklahoma Statutes (43 Okl.St.Ann. § 3 and 12 Okl.St.Ann. § 1283), same being as follows:

Section 1668: "Any unmarried male of the age of twenty-one years or upwards, or any unmarried female of the age of eighteen years or upwards and not otherwise disqualified, is capable of contracting and consenting to marriage; but no female under the age of eighteen years or no male under the age of twenty-one years shall enter into the marriage relation, nor shall any license issue therefor, except upon the consent and authority expressly given, either in person or in writing, by a parent or guardian, and if such consent be given in writing, the written instrument must be acknowledged before some officer authorized to take acknowledgments to deeds, and every male under the age of eighteen years, and every female under the age of fifteen years are expressly forbidden and prohibited from entering into the marriage relation: Provided, that this section shall not be construed to prevent the courts from authorizing the marriage of persons under the ages herein mentioned, in settlement of suits for seduction or bastardy when such marriage would not be incestuous under this Chapter."

Section 677: "When either of the parties to a marriage shall be incapable,

from *want of age or understanding,* of contracting such marriage, the same may be declared void by the district court, in an action brought by the incapable party or by the parent or guardian of such party; but the children of such marriage begotten before the same is annulled shall be legitimate. Cohabitation after such incapacity ceases, shall be a sufficient defense to any such action." (Italics ours.)

As above stated, the appellee alleged that section 1668 was violated at the time of the marriage in that the appellee was only 17 years of age and did not have the consent of either parent or guardian to the marriage, as required by law. He was but 17 years of age at the time, having become so June 13, 1935. The court instructed a verdict on this issue, and in the judgment recited: "That the evidence was undisputed that the marriage of the plaintiff and the defendant was voidable under the Statutes and laws of the State of Oklahoma where the marriage ceremony was performed and might be declared void in a proceeding instituted for such purpose as was this cause for the reasons that the plaintiff was a minor at the time that said marriage ceremony was performed, 17 years of age, and that he did not have the consent in writing of his parents, or either of them, acknowledged in the way and manner as required by the Statutes and laws of the State of Oklahoma, and that he was under the age in which a marriage is permitted to be performed in the State of Oklahoma, even with the written and acknowledged consent for marriage of minors as prescribed by the Statutes and laws of the State of Oklahoma."

The appellant pleaded that all the Oklahoma statutes alleged to have been violated and relied upon by the appellee for annulment had been held directory only and not mandatory. In support of such contention appellant and appellee agreed at trial as follows:

"It is agreed by and between the parties hereto that the Supreme Court of Oklahoma rendered a decision in the case of Reaves v. Reaves, on June 7, 1905, reported in 15 Okl. 240, 82 P. 490, 2 L.R.A.(N.S.) 353, wherein it was held as follows in substance and effect:

" 'Statutes regulating marriage are usually directory merely, and, when such statutes do not expressly prohibit or forbid other forms of marriages, a common-law marriage, consummated in accordance with the rules of the common law, is valid.'

"It was held also by the Supreme Court of Oklahoma in substance and effect on March 3, 1909, in the case of Hunt v. Hunt et al., 23.Okl. 490, 100 P. 541, 22 L.R.A.(N.S.) 1202, interpreting a Statute substantially similar to section 1668 [43 Okl.St.Ann. § 3] in a case where a youth of 16 years of age and a girl, 14 years of age,

" *'that while the marriage was prohibited and illegal, it was voidable only, and not void.'*

"It was also held in substance and effect by the Supreme Court of Oklahoma on June 4, 1918, in the case of Hughes v. Kano, 68 Okl. 203, 173 P. 447, as follows:

" 'A common-law marriage may exist in this state, and when parties capable of entering into the marital relation agree to be and become husband and wife, and in pursuance of this agreement enter into and thereafter maintain the marriage relation, the common-law marriage exists.'

"Also it was held in the same case, construing section 3885 of the Revised Laws of 1910 [43 Okl.St.Ann. § 3] which section was substantially the same as the above Article #1668, 'A common-law marriage entered into in this state by persons prohibited from marrying under the provisions of section 3885, Rev.Laws of 1910, is *voidable, but not void.'*

"In the case of Hughes v. Kano, supra, said Court was considering a case in which the question was whether a boy between 16 and 17 years of age had contracted a common law marriage. The appellate court upheld a finding of the trial court that said boy was a common law husband.

"In the case of In re Love's Estate, 42 Okl. 478, 142 P. 305, 307, L.R.A.1915E, 109, by the Supreme Court of Oklahoma and decided July 14, 1914, said Court, after quoting section 3886, which is now section 1669 [43 Okl.St.Ann. § 4] above cited, said:

" 'and we feel that it may be said with confidence that it is held, by the great weight of authority, that in common-law states a marriage contract entered into in conformity to the common-law requirements is valid, notwithstanding the statutes in force provide for a ceremonial marriage under license, and in a certain way, and by certain ministers or officers only. And that such marriages will only be held void where the statutes of the state in terms declare them so.'

"It was also held in the same case as follows:

"'And the rule applied in testing whether or not a marriage is void or merely voidable is well stated in Fearnow v. Jones, 34 Okl. 694, 699, 126 P. 1015, 1017, L.R.A. 1916C, 720, thus:

"'"A marriage may be considered voidable when it is possible, under any circumstances, for the plaintiffs to contract the marriage, or subsequently to ratify it, while it should be considered void if it is impossible for them under the law to contract it, and if it is impossible for them subsequently by any conduct to ratify it, and if the statute expressly declares that it is void."'" (Italics ours.)

The statement given under this point will be, in whole or in part, material in connection with facts under following propositions, but will not be repeated.

As to the second proposition, it was agreed by the parties that the appellee, Paul Portwood, did not obtain consent of either of his parents, as required by section 1668, before the marriage license was issued. This lack of consent was taken by the trial court as ground for peremptory instruction for annulment in favor of appellee.

The third proposition is predicated upon the alleged infraction of section 1670 of the Oklahoma Statutes (43 Okl.St.Ann. § 5), which reads as follows: "The judge or clerk of the county court, upon application in writing signed and sworn to in person before him by a person legally competent to make and take oath, and having personal knowledge of the facts, setting forth the full names and ages and places of residence of the persons to be married, and that such persons are not disqualified or incapable of entering into the marriage relation, nor of the relationship prohibited by law, and being satisfied of the truth and sufficiency of such application, and that there is no legal impediment to such marriage, shall issue under his hand and the seal of his court, the license authorizing such marriage; such license shall be valid only in the county in which it is issued."

The evidence discloses that the appellee, who alone purported to swear to application for marriage license, signed same but did not in fact swear to it. This infraction of section 1670 was taken as a ground for the peremptory instruction in favor of appellee.

Appellee also pleaded section 1669 of the Statutes of Oklahoma (43 Okl.St.Ann. § 4), which is as follows: "No person shall enter into or contract the marriage relation, nor shall any person perform or solemnize the ceremony of any marriage in this State without a license being first issued by the *judge or clerk* of the county court, of some county in this State, authorizing the marriage between the persons named in such license." (Italics ours.)

The appellee's contention based upon the infraction of this statute is thus alleged: "That about 5 o'clock a. m. on the 25th day of November, 1935, that said minor and defendant * * * went to the courthouse in Walters, Cotton County, Oklahoma, with one Roy Norman, a Justice of the Peace * * * and * * * said Justice of the Peace used a marriage license signed in blank in said courthouse in performing said purported marriage ceremony, which said license was not issued by the judge or clerk of the county court of Cotton County, Oklahoma, authorizing said Justice of the Peace to perform a ceremony between persons named in such purported license as provided by the terms of said Article of the statutes, which was then in full force and effect in the State of Oklahoma and in said Cotton County."

The testimony establishes that the marriage license was signed in blank by the county clerk of Cotton county, Okl., by his deputy. The blanks in the license were filled in by the justice of the peace, Roy Norman, who, by virtue thereof, performed the marriage ceremony and who, by permission of the clerk, had access to same when parties came to him to be married at night or times other than office hours for the clerk. A verdict for appellee was instructed on this ground.

The appellee further pleaded section 1671 of the Oklahoma Statutes (43 Okl.St.Ann. § 6), which is as follows: "The license herein provided for shall contain the date of its issuance, name of the court, the name of the city or town and county in which it is located, the full names of the persons to be married thereunder, their ages and places of residence and shall be directed to any person authorized by law to perform and solemnize the marriage ceremony, and shall fix the time of the return thereof, which shall not be more than thirty days from the date of its issuance, and shall contain a blank certificate to be made out by the person solemnizing or performing the marriage ceremony thereunder."

Under this contention and this statute the evidence is to the effect that the deputy

clerk, F. T. Wagner, signed "Tracy Daugherty, County Clerk," by himself, to the license in blank, and that "the contents of said marriage license had not been written in by said Court Clerk or deputy * * * after receiving a proper application sworn to as hereinabove set out." This quotation is from appellee's pleadings and deemed supported by the testimony. This, too, is taken by the trial court as ground for the peremptory instruction.

Appellee also pleaded violation of section 1672 of the Statutes of Oklahoma (43 Okl. St.Ann. § 7) as a ground for annulment: It reads: "All marriages must be contracted by a formal ceremony performed or solemnized *in the presence of at least two adults,* competent persons as witnesses."

Appellee alleged that the marriage took place in violation of this statute in that the deputy clerk, F. T. Wagner, in addition to signing his name as above stated to the application for marriage, also signed his name to the certificate of marriage as a witness to such marriage; that in fact the said Wagner was not present at the marriage ceremony and did not at any time see either said appellee or appellant. Their testimony is that said Wagner was absent at the time of said wedding, although he signed a certificate along with George E. Beach as witnesses to the same. The absence of said Wagner at the wedding as such witness was taken by the trial court as a ground for the peremptory instruction, it being held that the statutes of Oklahoma require a marriage certificate to be signed by two witnesses who were present at the marriage ceremony.

The marriage ceremony, however, was witnessed by the following persons, in addition to the principal parties: Roy Norman, officiating justice of the peace; George Beach, constable; Forrest Lindley, Viola Lyons. All were adults except Viola Lyons, who was then 19 years of age past. There is no pleading or testimony that the ceremony was not performed in the presence of at least two adult witnesses, and section 1672 merely requires such to be "solemnized in the presence of at least two adults, competent persons as witnesses."

In Texas, as in most states and jurisdictions, " * * * statutes have been enacted regulating the manner and method of creating the marriage relation. The general rule is that statutes which direct that a license must be issued and procured, that only certain persons shall perform the ceremony, that a certain number of witnesses shall be present and that a certificate of marriage shall be signed, returned, and recorded, and that persons violating the conditions shall be guilty of a criminal offense, are addressed to persons in authority to secure publicity, and to require a record to be made of marriages contracted. * * *" 18 R.C.L. § 17, p. 396.

"In most, if not in all, jurisdictions, parties contemplating marriage are required by statute to secure a license from a specified officer before they enter into the marriage relation. * * * In accordance with the general rule previously stated, that statutes regulating the mode of entering into the marriage relation are directory merely, it is usually held that the provisions of statutes requiring that a license be obtained before performance of the marriage ceremony are merely directory, and that although a marriage is entered into otherwise and in accordance with the provisions of such statutes it is nevertheless a valid marriage. It is only when by the terms of these statutes it is peculiarly provided that a failure to comply with their provisions shall render the marriage void that this effect is given to them." 18 R.C.L. pp. 399, 400, § 19.

In determining the legal effect to be given the infractions of the Oklahoma statutes relied upon for annulment, the "strongest presumption possible known to the law in favor of the validity of the marriage contract" exists. Carter v. Green (Tex.Civ.App.) 64 S.W.(2d) 1069; 28 Tex. Jur. p. 732, and authorities there cited. The principle is also stated in 38 C.J. pp. 1354, 1355, as follows: "In view of the peculiar nature of marriage and the grave consequences attendant upon its subversion, the courts will not grant a decree of nullity except upon the production of clear, satisfactory and convincing evidence."

Although the trial court seems to have held each infraction of the Oklahoma law sufficient to render the marriage void and to be a ground of annulment, we are inclined to the view that a proper interpretation of the judgment is that the trial court proceeded upon the theory that each infraction rendered the marriage voidable only. The language of the judgment negatives the idea that the marriage was held void ab initio. Such interpretation is believed to be in harmony with the letter and spirit of section 677 of the Oklahoma Statutes (12 Okl.St.Ann. § 1283), which undoubtedly gives in that state a

type of legal status or binding effect to the marriage until set aside by a suit on a ground specified in that section, namely, "when either of the parties to a marriage shall be incapable, from want of age or understanding, of contracting such marriage." Obviously, avoidance or invalidity in such cases is there conditioned upon an action being brought for that purpose. The general rule is that a marriage valid where contracted is valid everywhere, and that one void where contracted is void everywhere. Thompson v. Thompson (Tex. Civ.App.) 202 S.W. 175; 38 C.J. p. 1276; 18 R.C.L. p. 388. Hence, in the light of the opinion by the Supreme Court of Oklahoma in Reaves v. Reaves, 15 Okl. 240, 82 P. 490, 2 L.R.A.(N.S.) 353, Hunt v. Hunt, supra, and the excerpt from Ruling Case Law, and in view of the fact that the common law prevails in Texas, except where modified, changed, or abrogated by statute, we are of the opinion that the marriage under attack was not void from the beginning and therefore subject to annulment for any of the statutory reasons alleged. The Oklahoma statutes to which this marriage runs counter in certain details are directory rather than mandatory. Hunt v. Hunt, supra. The fact that Paul Portwood was only 17 years of age at the time of his marriage does not render his marriage absolutely void even in Oklahoma. Hunt v. Hunt, supra, and Reaves v. Reaves, supra. This, for the reason that no Oklahoma statute is found specifically so declaring.

Reverting to the terms of section 677 (12 Okl.St.Ann. § 1283), it will be seen that the marriage in so far as it may be affected by the age of the appellee might have been declared void by the district court of that state "in an action brought by the incapable party or by the parent or guardian of such party." That article also protects legitimacy of children, if any, in such marriages, but the clear implication from the language of that statute is that such marriage would have a well-recognized binding and legal effect until altered or set aside by decree of a district court pursuant to the terms of that statute. If no suit were ever filed to set aside the marriage contract, its validity from the beginning could not be questioned. It would carry the recognition of law, although entered into under an imperfect compliance with the law. As said by the Supreme Court of California in Dunphy v. Dunphy, 161 Cal. 87, 118 P.

445, 446: "A merely voidable marriage must be treated as valid for all civil purposes until annulled by judicial decree.' State v. Lowell, 78 Minn. 166, 80 N.W. 877, 46 L.R.A. 440, 79 Am.St.Rep. 358; Willits v. Willits, 76 Neb. 228, 107 N.W. 379, 5 L.R.A.(N.S.) 767, 14 Ann.Cas. 883. It would appear to necessarily follow that, so far as the annulment proceedings are concerned, it must continue to be accepted as a valid marriage until the decree of annulment therein has become final."

Had appellee instituted this suit in Oklahoma, there could have been no relief granted him other than by virtue of section 677 of the Oklahoma Statutes (12 Okl.St.Ann. § 1283). That article gives the full measure of the powers of a district court of Oklahoma to set aside the marriage. 38 C.J. 1348, § 121, note 42. Such suit must necessarily have been predicated upon the allegation that the plaintiff was "incapable from want of age or understanding of contracting such marriage. * * *" However, we must determine the legal status of this marriage in Texas where the law of the forum in a material sense enters into a proper decision of the questions raised.

It is obvious that, if this marriage had been solemnized in Texas as it was in Oklahoma, it would be valid and not subject to attack on any statutory ground set out in the appellee's pleadings, the irregularities in matters of making application for license, the license itself, performance of ceremony, witnesses, etc., being immaterial and relating to statutes held to be directory only. 28 Tex.Jur. p. 725, § 29. Further, the appellee's age in Texas would not be material for repudiation of the marriage contract, since the law of Texas, as evidenced by article 4603, provides: "Males under sixteen and females under fourteen years of age shall not marry."

This falls considerably below the consent age limit fixed by the Oklahoma statute (18 years for males and 15 years for females), and grants a larger discretion in matters of marriage to a male 17 years of age, as was the plaintiff. By plain implication said article 4603 authorizes the marriage of a male 17 years of age. Statutes so worded are construed to have such converse meaning or effect. As said in Red River Nat. Bank v. Ferguson, 109 Tex. 287, 206 S.W. 923, 925, "It is to be construed as if so written."

With a possible exception our annulment statute (article 4628) gives no recognition to such grounds as those embraced in the plaintiff's pleadings and pointed out in section 677 of the Oklahoma Statutes (12 Okl. St.Ann. § 1283). Article 4628, R.S. of Texas, is as follows: "The marriage relation may be dissolved when the causes alleged therefor shall be natural or incurable impotency of body at the time of entering into the marriage contract, or any other impediment that rendered such contract void, and the court may decree the marriage to be null and void."

The only possible impediment (if it may be considered such, namely, "incapable from want of understanding," Oklahoma statute, section 677) embraced in the plaintiff's pleadings and which might find countenance in the last-quoted Texas statute (annulment), is the charge that the plaintiff was so completely intoxicated at the time of the marriage as to be unable to understand and legally enter into such marriage relation. In 28 Tex.Jur. p. 728, § 31, it is said of article 4628, Revised Statutes of Texas: "This statute has been given a broad interpretation. It has been applied, not only to impediments other than 'natural or incurable impotency of body', but also, as we have seen, to those *equitable grounds for recission* that apply to contracts generally. Accordingly it is clear that the term void as used in the statute is employed in a sense to include voidable. * * *" (Italics ours.) See Carter v. Green, supra.

On page 725, § 30, of the same text it is said: "Thus it is well settled that a marriage may be rescinded for fraud, duress, *mental incapacity* of a party, or other equitable ground for such relief." (Italics ours.)

However, the right of avoidance of the marriage relation predicated upon incapacity from intoxication will be hereinafter specifically considered, but it is our opinion that the other irregularities or infractions of the Oklahoma laws relied upon for annulment are not recognized as grounds for such action in this state, or given that effect by either of the two Texas statutes last quoted and comprehensive on the subject. Further, the Oklahoma statute (section 677 [12 Okl.St.Ann. § 1283]) limits right of annulment to lack of capacity for marriage, growing out of want of age or understanding of a contracting party. But the marriage is valid so far as the Texas laws bearing upon such statutory relief are concerned, subject, however, to be set aside upon the ground of intoxication, etc. Whether the right to set it aside on this ground is derived from article 4628, R.S. of Texas (treating lack of understanding from inordinate use of intoxicating liquors as "any other impediments"), or is based upon the principle of equitable rescission, the result would be the same. That is, if we are correct in this conclusion, it follows logically regardless of whether the issue based on intoxication is considered on the theory of comity (9 Tex.Jur. p. 357, § 5) between the two states, or is considered merely an independent equitable ground for annulment.

Articles 4603 and 4628, R.S. of Texas, and the decisions in this state, declare the settled policy of the state in annulment proceedings. Except on the issue of "incapacity from want of understanding" (due to intoxication) to contract the marriage relation, the spirit of the Texas statutes just referred to is at variance with the statutes of Oklahoma on the other grounds claimed to be infractions of the Oklahoma law. Our public policy in such matters is reflected by a statement of the law in 9 Tex.Jur. pp. 356, 357, which reads as follows: "The doctrine of comity extends ordinarily only to rights; *it does not embrace remedies*. Again, to justify an application of the principle it is generally necessary that the laws of the State where it is attempted to be invoked have a public policy in conformity to the foreign law; and obligations, contracts and rights arising under the provisions of law of other states will be enforced only where the foreign laws are analagous or similar to the laws where the litigation is begun. The doctrine does not require that a Texas court enforce a foreign law or give effect to rights arising thereunder if to do so will contravene the policy of the state or work injury or injustice to a citizen or citizens thereof. It is said: 'The most liberal state comity cannot require Texas to enforce the laws of another when in conflict with its own law.'"

To the same effect is the opinion in Nueces Valley Townsite Co. v. San Antonio, U. & G. R. Co., 123 Tex. 167, 67 S.W.(2d) 215, 220: "No judgment * * * can be affirmed, which is contrary to the public policy of the state as declared by a

valid statute. City of Tyler v. St. Louis Southwestern Ry. Co., 99 Tex. 491, 500, 91 S.W. 1, 13 Ann.Cas. 911."

 For the reasons stated, section 677 of the Oklahoma Statutes (12 Okl.St. Ann. § 1283) is not available in the courts of Texas for the annulment of said marriage contract upon the statutory ground specified therein and not recognized here. That statute cannot be imported and used as authority for annulment of the marriage relation on such grounds any more than a ground for divorce in Oklahoma and cumulative of our statutory grounds for divorce could be imported from that state and form the basis of a judgment for divorce in Texas. Said section 677 is clearly remedial and procedural. Mexican Nat. Ry. Co. v. Jackson (Tex.Civ.App.) 32 S.W. 230; Id., 89 Tex. 107, 33 S.W. 857, 31 L.R. A. 276, 59 Am.St.Rep. 28; 12 C.J. p. 438, § 11; p. 447, § 27; p. 482, § 92.

Summarizing briefly, the marriage in the instant case is not truly void ab initio by virtue of any statute in Oklahoma declaring it to be such, and in the light of the two Texas statutes the marriage appears to be unavoidable on all Oklahoma statutory grounds alleged, unless there be an exception with respect to incapacity to understand the nature of the contract, such incapacity being predicated upon intoxication, etc. It follows that the propositions under consideration are sustained.

We next consider the ninth proposition challenging as error the trial court's action in peremptorily instructing a jury verdict in favor of the appellee on the issue of whether or not at the time of the marriage he was under the influence of intoxicants to a degree sufficient in law to authorize and require an annulment of the marriage.

 It is the general rule of law that, if a person when married is so intoxicated as to be non compos mentis, does not know what he is doing, and is deprived of his reason, the marriage is invalid, but it is not invalid if the intoxication is of a less degree. Among the numerous authorities supporting such statement of the rule are Dunphy v. Dunphy, supra; Ann.Cas.1913B, 1230, notes. See, also, notes, 28 A.L.R. 648 et seq., 40 L.R.A. 740, 743; Medical Mur. Herzog (1931) p. 542. A statement of the law with specific reference to Texas is to be found in 10 Tex.Jur. p. 62, as follows: "To afford grounds for avoiding a contract, however, the intoxication must be so excessive as to render the person in-

capable of exercising his judgment or understanding the nature of the agreement and the consequences of its execution. Equity will not interfere in behalf of one who is intoxicated to a less degree, though sufficiently so as to materially affect and interfere with his reasoning, judgment and will, his intoxication not having been procured or taken advantage of unfairly by the other party."

In 18 R.C.L. p. 407, it is said: "The rule has been laid down that if a person when married is so intoxicated as to be non compos mentis, and does not know what he is doing, being, for the time, deprived of reason, the marriage is invalid, but it is not invalid if the intoxication is of a less degree than that stated."

For further authorities see 19 C.J. p. 815.

 The nature of the testimony, if any, on the issue of intoxication will now be considered. This we do in the light of the rule requiring this court to take as true the appellant's evidence since an instructed verdict was given against her. Moreman v. Armour & Co. (Tex.Civ.App.) 65 S.W. (2d) 334, 336; Caruth v. Dallas Gas Co. (Tex.Civ.App.) 282 S.W. 334, 335; 3 Tex. Jur. 1049, 1051. The testimony on the issue is strikingly conflicting. There is an abundance of testimony supporting the appellant's theory on this issue, and the verdict and judgment either way on this issue could not be legally disturbed by this court. We are, therefore, forced to the conclusion that this assignment and proposition should be sustained, and that the judgment of the trial court should be reversed and the cause remanded for trial upon this ground.

 By the thirteenth proposition it is the appellant's contention that since by her pleadings and evidence she at least raised the issue that she in good faith and on probable cause had become liable for an attorney's fee to her attorneys who represent her herein, and, since the evidence further raised an issue as to what was a reasonable fee for such services, the trial court should not have instructed a verdict against her on the issue of her right to recover attorney's fees as pleaded by her.

We sustain this proposition upon the authority of Hunt v. Hunt, supra; Dunphy v. Dunphy, supra; Willits v. Willits, 76 Neb. 228, 107 N.W. 379, 5 L.R.A.(N.S.) 767, 14 Ann.Cas. 883; State ex rel. Wooten

v. Dist. Court, 57 Mont. 517, 189 P. 233, 9 A.L.R. 1212; 38 C.J. p. 1358, sec. 137.

In this ruling we are applying what appears to be the general rule in such cases. As stated in 38 C.J. p. 1359: "Where the husband brings the suit and the wife defends asserting the validity of the marriage she is in position to claim * * * an allowance for the expenses of the suit and for counsel fees, and it will be granted to her on a proper showing in virtue of the general equity jurisdiction of the court."

The text carries a note citing numerous authorities from many jurisdictions.

The appellant's brief contains some assignments addressed to matters and form of pleadings. Unnecessary issues based upon such consideration will doubtless be obviated upon another trial by simple and direct amendments or amplifications in such respect.

Other assignments have been considered and are hereby overruled.

For the reasons assigned, the judgment of the trial court is reversed and the cause remanded.